Jerome H. LEMELSON, Plaintiff,

v.

SYNERGISTICS RESEARCH CORP. and Allan Elfman, Defendants.

No. 78 Civ. 4335 (PNL).

United States District Court,
S. D. New York.

Jan. 8, 1981.

Glenn L. Stephenson, New York City, for plaintiff.

Victor M. Wigman, Wigman & Cohen, Arlington, Va., Howard Natter, Natter & Natter, New York City, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiff moves to disqualify defendants' counsel Victor Wigman contending that during a prior representation of plaintiff Wigman had access to confidential information relevant to this litigation; that Wigman will be or ought to be called as a witness at trial; and that counsel's obligation to avoid even the appearance of impropriety requires disqualification.

Defendants maintain that continued representation is proper and any disqualification would result in considerable hardship in light of counsel's long-term involvement on defendants' behalf in matters related to this litigation.

Having considered the evidence presented in two days of hearings, and the submissions of the parties, including lengthy affidavits and pre and post hearing briefs, I find that Wigman is not, by virtue of his prior involvement with plaintiff, in a position to use confidential information gained from plaintiff to defendants' unfair advantage; that the possibility that Wigman may be called as a witness at trial does not justify disqualification at this time, if ever; and that this case does not present the

"unusual [situation] where the 'appearance of impropriety' alone is sufficient to warrant disqualification."[1] *Armstrong v. McAlpin*, 625 F.2d 433, 446 (2 Cir. 1980). *See, e. g., Board of Education v. Nyquist*, 590 F.2d 1241 (2 Cir. 1979).

## THE CURRENT LITIGATION

Plaintiff Jerome Lemelson, an inventor, alleges that defendants Synergistics Research Corp., a manufacturer of toys and games, and Allan Elfman, Synergistic's president, are liable for breach of contract, fraud, breach of fiduciary duty and restraint of trade.

Defendants counterclaim seeking damages for restraint of trade, restitution of royalties paid plaintiff, reimbursement of monies advanced by defendants on plaintiff's behalf and correction of the inventorship of two patents.

These claims arose out of the breakdown of a business relationship between the parties. Plaintiff is the owner of U.S. Patent No. 3,032,345 for a velcro target game (the " '345 patent"). He is named with Elfman as the co-inventor of U.S. Patent Nos. 3,857,566 and 3,917,371 which represent improvements on the '345 patent (the "improvement patents").

On October 5, 1973, plaintiff entered a licensing agreement giving Synergistics certain rights in his '345 patent. From 1973–78 Synergistics paid royalties to Lemelson pursuant to this agreement.

The parties also entered into an agreement in June, 1974, to share royalties on the improvement patents. (Defendants contend however that the agreement is void.)

In December, 1975, the parties negotiated a new agreement (the "December 1975 agreement") designed to resolve disputed matters concerning the licensing agreement. The agreement granted Synergistics certain rights to enforce and defend the '345 and improvement patents. (Plaintiff denies that this agreement ever took effect.)

---

1. The disqualification motion was first denied by order dated July 18, 1980, in order to permit the early resumption of discovery without the delay attendant upon preparation of this opinion.

In June of 1978, the '345 patent was declared invalid as obvious in light of prior art in *Centsable Products, Inc. v. Lemelson*, No. 75–3717 (N.D.Ill. June 12, 1978), *aff'd*, 591 F.2d 400 (7 Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). In light of the district court decision, Synergistics notified plaintiff that no further royalties would be paid.

In the instant litigation plaintiff contends *inter alia* that defendant improperly enforced the '345 patent with the intent that it be challenged and declared illegal. Defendant contends, *inter alia*, that Lemelson withheld from defendants information which he knew rendered his '345 patent invalid.

## WIGMAN'S PRIOR REPRESENTATION OF PLAINTIFF AND DEFENDANTS

I find that Wigman's involvement as counsel to the parties has been as follows: He has represented both defendants in patent, trademark and copyright matters for approximately ten years. In 1973, he advised Synergistics in regard to the licensing agreement which it entered with plaintiff. At the time, plaintiff was represented by another lawyer.

When disputes arose as to the terms and conditions of the licensing agreement Wigman continued to represent Synergistics and participated in meetings on Synergistics' behalf with Lemelson and his counsel. During negotiation of the December 1975 agreement, Wigman represented defendants, while Lemelson was again represented by his own counsel.

From 1975 to 1978 Synergistics prosecuted various lawsuits to enforce and defend the '345 and improvement patents. Lemelson as patentee was named plaintiff or defendant in most of these suits which were concerned with questions of validity and infringements of the patents.

The suits were officially brought by local counsel. Wigman participated in most as "of counsel" and was in general charge of the litigations. He received instructions from and was paid by Synergistics. Synergistics in turn charged plaintiff for a portion of Wigman's fees by deductions from royalty payments. Wigman did not bill Lemelson, or receive instructions from him. Reports to Lemelson were limited to infrequent and informal responses to casual inquiries by plaintiff in person or by telephone.

During this period Wigman's firm filed and prosecuted nine foreign patent applications at the request of Synergistics for the improvement patents. These applications named Elfman and Lemelson as joint inventors. Wigman's firm's work was basically limited to conforming these applications to the U.S. patent upon which they were based and which had been filed by Lemelson.

The only direct representation of Lemelson undertaken by Wigman concerned the prosecution of a number of patent applications which plaintiff then had pending before the U.S. Patent and Trademark Office, none of which are at issue in this suit. At the time this suit was filed, Wigman's firm was still attorney of record in regard to these applications, but it has since withdrawn.

*Applicable Standard*

In order to justify disqualification of his former counsel a party must show that a "substantial relationship" exists between the issues in the prior and present cases.[2] *E. g., Cheng v. GAF Corp.*, 631 F.2d 1052 (2 Cir. 1980); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2 Cir. 1978); *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953).

---

**2.** In determining the merits of disqualification motions, courts have also considered whether "the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client". *E. g., Allegaert v. Perot*, 565 F.2d 246, 250 (2 Cir. 1977); *Domed Stadium Hotel v. Holiday Inns, Inc.*, 479 F.Supp. 465 (E.D.La.1979); *Le-*

*vin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 883 (E.D.Pa.1976), *dism'd*, 549 F.2d 795 (3 Cir. 1977).

In light of my conclusion that defendants have clearly established that Wigman did not receive any relevant confidential information, I need not determine whether this showing was made. (I do however question that it was.)

When such a showing is made the court may assume that counsel was the recipient of confidences from his former client. It is clear that when the former representation was by the attorney's firm and the attorney was not directly involved, the assumption of the receipt of confidential information takes the form of a rebuttable inference. *E. g., Cheng, supra; Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2 Cir. 1975). It may be argued that when, as here, the attorney was personally involved in, indeed in control of, the prior representation, there is an irrebuttable presumption of receipt of confidential information. *See Government of India v. Cook Industries, Inc.*, 422 F.Supp. 1057, 1059–60, (S.D.N.Y.1976) *aff'd*, 569 F.2d 737 (2 Cir. 1978). However I would consider the better view to be that the court has latitude to permit the attorney to rebut even this presumption. *See Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 741. (Mansfield, J., concurring)

## PLAINTIFF'S CONTENTIONS

Plaintiff focuses on three respects in which the issues in Wigman's former representation of him were substantially related to matters now at issue and led to Wigman's receipt of confidential information.[3]

### 1. *The Improvement Patents*

Plaintiff contends that Wigman's filing of foreign patent applications for the improvement patent involved issues of the inventorship and scope of those patents now relevant to defendants' counterclaim alleging that Lemelson was not the co-inventor of the improvement patents.

As is indicated above, defendants and Wigman have demonstrated that Wigman's work on the foreign patent applications was essentially ministerial, a question of putting the information on the already filed U.S. application in the appropriate form for foreign filing. There were no discussions[4] concerning Lemelson's co-inventorship since that matter had been established by the U.S. filing which showed Elfman and Lemelson as co-inventors, and the foreign applications had to conform to the U.S. filings in this regard. Hearing Transcript at 212.

Wigman's access to the patent applications on file in the United States Patent Office which, while then "secret," became part of the public file as soon as the patents issued (and which were equally Elfman's applications), could not conceivably taint Wigman's present appearance as counsel.

### 2. *Validity of the '345 patent*

In defending the '345 patent in *Centsable* Wigman sought to show that the patent was valid in the face of certain prior art and prior to certain other art. Lemelson contends that this involved the exploration of issues substantially related to the issues raised by Synergistics counterclaim that Lemelson fraudulently procured the '345 patent with awareness of its invalidity in light of prior art.

---

**3.** Plaintiff suggests that he outlined the confidential information allegedly received in response to my direction that plaintiff identify the specific confidential information allegedly conveyed to Wigman. He complains that this imposes an improper burden on the party seeking to disqualify opposing counsel. *See, e. g., Cheng v. GAF Corp.*, 631 F.2d 1052 (2 Cir. 1980); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2 Cir. 1978). Plaintiff misstates the nature of my request. I was not directing Lemelson to bring out the confidences previously given to his lawyer. To the contrary, Lemelson had already voluntarily testified to the nature of such alleged confidences. My request, not made until the hearing had concluded, was directed to the post hearing briefs and the anticipated discussion of the evidence which had been received. What I asked was that the attorneys in their briefs address themselves to the matters that Lemelson contended had been revealed and to the explanation of the relationship of such matters to issues involved in the earlier and in the present litigation. I did not, and do not, require of the plaintiff that he disclose or specify prior confidences revealed to his attorney.

**4.** I do not find credible Lemelson's testimony that when Wigman was preparing the foreign applications, Lemelson discussed with him the particular circumstances surrounding Lemelson's co-inventorship of the improvement patents because Wigman "wanted to know what my contribution to the co-inventorship was." Hearing Transcript at 135.

Defendants point out that the prior art at issue in *Centsable* was different from that upon which they rely. They argue further that the issue in *Centsable* was the effect of certain art, whereas at issue in their counterclaim in this action is Lemelson's knowledge of that art and its effect.

The question of whether Wigman's representation of plaintiff in *Centsable* and other litigation related to the '345 patent involved issues now in dispute is somewhat difficult. It is my conclusion that there was not the relationship of issues which would justify an assumption that Wigman received relevant confidential information. In any case plaintiff has simplified the inquiry in this respect by outlining the precise manner in which he contends confidential information relevant · to this action was imparted to Wigman. I find it clear that nothing in this aspect of plaintiff's and Wigman's relationship justifies Wigman's disqualification.

The testimony at the hearing established that all information given by Lemelson to Wigman was immediately incorporated in an affidavit, drafted by Lemelson (who was very experienced in such litigation), and furnished to Wigman for filing, setting out the dates and circumstances of his conception and reduction to practice of the '345 patent. All information conveyed to Wigman was made part of the public record in the *Centsable* case.

*Defendant's Investigatory Trip to Florida*

Plaintiff maintains that during the *Centsable* litigation in Illinois Lemelson traveled to Florida in order to investigate whether the *Centsable* plaintiffs were there infringing the '345 patent and whether Florida would be a more hospitable forum than Illinois for a counterclaim on behalf of the patent. Lemelson's activities in Florida included contacting an attorney suggested by Wigman to discuss a possible countersuit. Plaintiff contends that he informed Wigman of the results of this investigation and this information is relevant to the present action. The information now claimed to have been given to Wigman in

confidence was also given by Lemelson to Synergistics in a letter dated September 13, 1976. In any event, this information is not "substantially" related to the issues in the present case, within the meaning of the controlling cases cited above.

I am fully satisfied that Wigman's prior involvement with plaintiff will not unfairly advantage defendants in this litigation[5] and in no way threatens the integrity of these proceedings. Accordingly plaintiff's motion to disqualify Wigman must be denied.

WIGMAN'S APPEARANCE AS A WITNESS AT TRIAL

■ Plaintiff contends that Wigman ought to be called by defendants as a witness at trial and is likely to be called by plaintiff and therefore his continued representation of defendant is improper. Plaintiff relies on the Disciplinary Rules of the A.B.A. Code of Professional Responsibility which provide in pertinent part:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he ... ought to be called as a witness, except that he may undertake the employment and he ... may testify:

. . . . .

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer ... as counsel in the particular case. DR 5–101(B)

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from ᴕhe conduct of the trial ... except that he may continue the representation and he ... may testify in the circumstances enumerated in ... [D.R. 5–101(B)(4)]. DR 5–102(A)

If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he ... may be

**5.** As to whatever advantage defendants may gain from Wigman's familiarity with the case, that familiarity is attributable primarily to his prior representation of defendants.

called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. DR 5–102(B)

I find, first, that at the time Wigman undertook to represent defendants in this litigation he did not know, and it was not obvious, that he ought to be called as a witness. He reasonably assumed that his testimony was in no way necessary to defendants and would certainly not be sought by plaintiff. DR 5–101(A) is therefore not pertinent.

While as the issues are now presented there are issues as to which Wigman could be called as a witness by one side or another, I nevertheless find that disqualification is not required by DR 5–102(A) or (B).

To the extent plaintiff is relying on the possibility that he will call Wigman, there is no suggestion that Wigman's testimony will be prejudicial to defendants in any way. While plaintiff relies in part on the prejudice to himself, prejudice to a former client is not covered by DR 5–105(B).

To the extent he contends that defendants ought to call Wigman, this has not been shown. *See Norman Norell, Inc. v. Federated Department Stores, Inc.*, 450 F.Supp. 127 (S.D.N.Y.1978); *Ross v. Great Atlantic & Pacific Tea Co., Inc.*, 447 F.Supp. 406 (S.D.N.Y.1978); *Foster Wheeler Corp. v. Babcock & Wilcox Co.*, 440 F.Supp. 897 (S.D.N.Y.1977); *See also International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2 Cir. 1975). Mr. Wigman will of course remain aware of his obligations as trial preparation proceeds.

So ordered.