BEVERLY RENTZ BENTLEY MAILER vs. NORMAN K. MAILER.

Barnstable. September 13, 1983. — November 8, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Disqualification. *Divorce and Separation,* Alimony, Findings by judge.

In the circumstances, the judge in a divorce case did not commit reversible error in denying the wife's motion to disqualify the husband's attorney, whom the wife had consulted on one occasion some five years earlier concerning a divorce from the husband. [372-375]

The judge in a divorce case did not abuse his discretion in providing for termination of alimony payments to the wife after seven years and of medical insurance benefits after three years. [375]

COMPLAINT for divorce filed in the Probate Court for the county of Barnstable on October 22, 1976.

The case was heard by *Lewis,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Gerald L. Nissenbaum* for the plaintiff.

*Monroe L. Inker* for the defendant.

NOLAN, J. A judgment of divorce nisi in favor of Beverly Rentz Bentley Mailer against Norman K. Mailer, the defendant, was entered on March 21, 1980. The plaintiff appealed to the Appeals Court and we transferred the case to this court on our own motion. There are two issues for appellate review arising out of this divorce: (1) the denial of the plaintiff's motion to disqualify Attorney Monroe L. Inker as counsel for the defendant, and (2) the provision for spousal support and medical insurance for the plaintiff. Perceiving no error on either issue, we affirm the judgment.

From the judge's findings of fact in the divorce proceeding, we learn that the plaintiff and the defendant were

married on December 28, 1963, and separated in the sum-
mer of 1970. Two children, born in 1964 and 1966, were
the fruits of the marriage. The plaintiff had been an actress
with more than moderate success before the marriage and
the defendant was and continues to be a writer of substan-
tial acclaim.

1. *Disqualification of Mr. Inker.* The plaintiff consulted
Mr. Inker in his office in June, 1973, concerning a divorce
from the defendant. She furnished certain information to
Mr. Inker's secretary, who prepared an interoffice form
(domestic relations interview sheet) which Mr. Inker ex-
amined before or during his interview with the plaintiff.
This form contained little more than some vital statistics
pertaining to the plaintiff and the defendant, and an iden-
tification of the parties' real estate, mortgages, and in-
vestments. The interview lasted approximately one hour.
Mr. Inker told the plaintiff that if she wished him to repre-
sent her, she had to prepare her life history for him and pay
him a retainer of $2,400.

That interview marked the first and only meeting of Mr.
Inker with the plaintiff until October 23, 1978, when a
hearing commenced on the plaintiff's motion to strike the
appearance of Mr. Inker for the defendant. The plaintiff in
July, 1974, retained the attorneys who represented her
throughout the trial.

We are without the benefit of findings of fact from the
trial judge who heard the testimony of the plaintiff and Mr.
Inker at the hearing on the motion to strike. However, the
record includes the motion for an evidentiary hearing filed
by Mr. Inker, a transcript of the evidence, and an affidavit
of the plaintiff.

The judge could have found, because the plaintiff admit-
ted, that she consulted Mr. Inker "to learn something about
Massachusetts divorces and the procedure for getting a
divorce in Massachusetts," and that Mr. Inker explained the
procedure for making attachments of real estate. The
plaintiff gave Mr. Inker a copy of a June 15, 1973, article in
the Boston Globe newspaper about the defendant's presence

at a college reunion accompanied by a woman to whom the defendant referred as his fifth wife. The plaintiff said that she did not retain Mr. Inker because his exposition of the law of attachments frightened her and she did not want a "sensational case for the sake of [her] children and for the sake of [her] husband." The plaintiff admitted that she could not recall all that she had told Mr. Inker but she remembered telling him about her conduct as a wife and mother and the defendant's conduct toward her over several years and his earnings as an author. Mr. Inker denied that the plaintiff had told him about her life with the defendant as a wife and mother of their children or about the defendant's conduct during the marriage. Mr. Inker testified that he did not discuss grounds for divorce with the plaintiff except in connection with the newspaper article's reference to the defendant's "fifth wife" and the "adulterous conduct" which might be proved from the defendant's admission in this regard.

We would have been assisted if the judge had made findings of fact. See *Fullmer* v. *Harper*, 517 F.2d 20, 21-22 (10th Cir. 1975). The evidence is reported and we shall invoke the rule that the judge's decision imports every finding essential to sustain it if there is evidence to support it. We think that there was such evidence. See *Atwood* v. *First Nat'l Bank*, 366 Mass. 519, 522 (1974). But see *Schrottman* v. *Barnicle*, 386 Mass. 627, 638 (1982) (failure to make findings require remand where legal standard applied cannot be discerned).

On the merits of the disqualification, the question is close. We are faced with the problem of reconciling the right of a person to counsel of his choice on the one hand, and the obligation of "maintaining the highest standards of professional conduct and the scrupulous administration of justice," on the other. *Hull* v. *Celanese Corp.*, 513 F.2d 568, 569 (2d Cir. 1975). In a different disqualification context, we have said that the right of a litigant to counsel of his choosing is not absolute and cannot always predominate. *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145, 151

(1982). The plaintiff consulted Mr. Inker. She furnished some information to him on the client history form and orally communicated more information. That she did not pay Mr. Inker a fee is not conclusive as to the existence of the attorney-client relationship. *Westinghouse Elec. Corp.* v. *Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir.), cert. denied, 439 U.S. 955 (1978). To argue, as the plaintiff does, that a fiduciary obligation results whenever a preliminary consultation occurs begs the question whether an attorney-client relationship as yet exists.

The record does not disclose whether the judge believed the plaintiff when she testified that she disclosed intimate details of their marriage. The judge was not required to believe that either the plaintiff disclosed or Mr. Inker learned anything beyond that which was on the information sheet or which had been published in the Boston Globe. See *Lemelson* v. *Synergistics Research Corp.*, 504 F. Supp. 1164, 1167 n.4 (S.D.N.Y. 1981). The information concerning the plaintiff's financial position was on the record in the Probate Court as a financial statement at or about the time of the hearing on the motion to disqualify. The information on the client history form was already, for the most part, known by the defendant and hence there could be no compromising disclosure by Mr. Inker. The record fails to support the plaintiff's argument that Mr. Inker used information confided to him by the plaintiff against her at trial. Most, if not all, of the information used at trial could have been obtained by any curious member of the public.

Time is a relevant consideration, but not a controlling one. Five years had elapsed since the interview; some of the information furnished by the plaintiff was no longer accurate. We do not wish to suggest that the lapse of time, especially a period of five years, is sufficient to remove all bases for disqualification in every case. We simply note that time is a factor that may be weighed. The stronger the relationship, the longer the disqualification. The weaker the relationship, the shorter the period of disqualification need be. See *Reardon* v. *Marlayne, Inc.*, 83 N.J. 460, 476

(1980). That time is relevant does nothing to detract from the principle that in cases of doubt, counsel must resolve all questions against the acceptance of employment whenever such acceptance may impinge upon the interests of his present and former clients.

In holding, as we do, that the judge did not commit reversible error in denying the plaintiff's motion to disqualify Mr. Inker, we hasten to point out that the facts in this case probably bring us as close to the outer limits as we shall want to go. We simply conclude that Mr. Inker's appearance and representation of the defendant does not require reversal of the judgment of divorce.

2. *Automatic termination of support.* The judgment of divorce nisi in its material parts requires the defendant to pay the plaintiff $575 a week as alimony for seven years, to maintain health insurance coverage for the plaintiff for three years, to make a lump sum payment of $7,500 from the defendant's joint interest in Maine real estate and to deliver certain items of furniture to the plaintiff. Provisions were made for an increase in alimony "based on the percentage increase in the Consumer Price Index for the City of New York." The plaintiff argues that automatic termination of spousal support and medical insurance constitutes an abuse of discretion. We do not agree.

The plaintiff concedes that the judge gave recognition to all the factors collected in G. L. c. 208, § 34. See *Rice* v. *Rice,* 372 Mass. 398, 401 (1977). The judge's findings of fact are detailed and comprehensive. Although they reflect, in part, the defendant's input from his proposed findings of fact, they do not lack evidence of the judge's own independent analysis and cachet. See *Cormier* v. *Carty,* 381 Mass. 234, 237 (1980). We find no reversible error in the judge's weighing of the criteria set forth in G. L. c. 208, § 34. No abuse of discretion has been demonstrated. *Ross* v. *Ross,* 385 Mass. 30, 36 (1982).

*Judgment affirmed.*