**Carroll M. DERRICKSON, Appellant,**

v.

**Lloyd DERRICKSON, Appellee.**

**No. 86–1010.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1987.
Decided April 29, 1988.

John W. Karr, with whom William G. McLain, Washington, D.C., was on the brief, for appellant.

Daniel G. Grove, with whom Carol A. Joffe and David Kovach, Washington, D.C., were on the brief, for appellee.

Before MACK, TERRY and ROGERS, Associate Judges.

MACK, Associate Judge:

On June 24, 1986, the Superior Court granted appellee's motion to disqualify Mark Sandground, Esquire, from appearing as counsel for appellant (appellee's ex-wife) in domestic relations litigation pending before that court. The court found that, because appellee had previously consulted Sandground, an attorney-client relationship had existed between the two, that there was a substantial relationship between the litigation before the court and the prior consultation, and that disqualification was thus appropriate under the Canons of Ethics. The court certified its order for interlocutory appeal and this appeal

followed. We reverse and remand for further proceedings.

## I.

In December, 1985, Mrs. Carroll Derrickson, through her newly-retained counsel, Mark Sandground, Esquire, filed a motion to increase the alimony and support payments she received from her ex-spouse, Lloyd Derrickson. Although the Derricksons had for some nine years been engaged in litigation stemming from the dissolution of their marriage, this marked the first appearance of Sandground.

Lloyd Derrickson responded with a motion to disqualify counsel. Mr. Derrickson alleged that approximately eight years earlier he had consulted with Sandground regarding the possible appeal of the Judgment of Absolute Divorce. According to his affidavit, the meeting lasted for approximately an hour and dealt generally with facts and issues in the divorce proceeding. At the conclusion of this meeting, Mr. Derrickson decided not to retain Sandground. Mr. Derrickson, at the hearing on the disqualification motion, admitted that he had "no memory of exactly what was discussed." [1]

In opposing the motion to disqualify, Sandground stated by affidavit that he never entered into an attorney-client relationship with Mr. Derrickson, never received any confidential information and had no recollection of the events of the alleged meeting. Sandground was emphatic: "I have absolutely no memory of ever meeting Lloyd Derrickson.... I have searched through our file records and there isn't a single notation concerning Lloyd Derrickson." Sandground continued: "I never became Mr. Derrickson's counsel; I never entered into an attorney-client relationship with him; I never received any compensation from him; I never received any confidential information from him; nor any confidential communication of any kind whatsoever."

---

1. Mr. Derrickson, in seeking disqualification, did not identify any specific confidential information allegedly conveyed in the initial consultation. Rather, he argued only that given the initial consultation, there was created an irrefutable presumption that Sandground had received such information.

For her part, Mrs. Derrickson, by affidavit, stated the importance to her of having Sandground serve as her attorney: "I believe that it is important that I have confidence in the lawyer I select, and that I have the right to be represented by the attorney that I myself choose. I chose Mr. Sandground because I believe him to be a lawyer who will aggressively move ahead in my matrimonial litigation to seek my lawful objectives."

After oral argument on the motion, the trial court granted the motion to disqualify and accordingly struck the appearance of Sandground as counsel for Mrs. Derrickson.[2] The issue now presented to this court is whether the trial court abused its discretion in disqualifying appellant's attorney.

## II.

This court has not often had the opportunity to discuss the circumstances in which disqualification of counsel is appropriate. When the opportunity has arisen, most often the circumstances have involved the possible conflict of interest of a former government attorney engaged in private practice. In *Brown v. District of Columbia Board of Zoning Adjustment*, 486 A.2d 37 (D.C.1984) (en banc), for example, this court affirmed the Zoning Adjustment Board's decision that two former government attorneys and their law firm should not be disqualified from representation in a matter which was currently pending before the Board. The court noted that the concern in such cases was that counsel might

have received "confidential information from [a] former client that could be used against it in the subsequent representation." *Id.* at 42. This court adopted the rule developed in *T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.,* 113 F.Supp. 265, 268 (S.D.N.Y.1953): "Where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." 486 A.2d at 42.[3]

In a footnote frequently cited and ultimately embraced by both counsel in the instant case, this court in *Brown* (quoting *T.C. Theatre, supra,* 113 F.Supp. at 268–69) explained the operation of the rule. " '[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.' " 486 A.2d at 42 n. 5. This court continued, " '[i]n order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case.' " 486 A.2d at 42 n. 5 (quoting *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 740 (2d Cir.1978)). Rather, "when a party seeking disqualification carries its burden of persuading the factfinder that two matters, handled by the same counsel, are substantially related, there is an *irrebuttable presumption*[4] that counsel re-

**2.** Subsequent to the filing of this appeal, the Office of Bar Counsel dismissed a complaint filed by Mr. Derrickson against Sandground, finding no grounds to conclude that there had been "a violation of the attorney's responsibility to warrant the institution of formal disciplinary proceedings."

**3.** This rule has been applied in every federal circuit and in most state courts as well. For a discussion of attorney disqualification in federal court litigation, *see* Silverstein, *Attorney Disqualification: A Confusing Body of Law in Need of Organization,* 30 VILL.L.REV. 463 (1985).

**4.** A presumption is an inference about a fact which has not been proven, from the existence of another fact which has been proven. *See* 4 J.

WIGMORE, EVIDENCE § 1356(a) (Chadbourn rev. 1970). The proven fact may be called the "basic fact"; the inferred fact may be called the "presumed fact." For example, here the presumed fact is that confidential information was transmitted between the attorney to be disqualified and the party seeking disqualification. The basic facts are that an attorney-client relationship formerly existed between the two and that the pending litigation is "substantially related" to the former representation. Normally a presumption is rebuttable by the presentation of contrary evidence. With irrefutable presumptions, however, once the basic fact is proven, the presumed fact is accepted as true regardless of any evidence to the contrary.

ceived information during the first representation that is relevant to the second." 486 A.2d at 42 n. 5 (emphasis added).

■ It is apparent from this court's explanation of the rule that two showings by the party seeking disqualification are required. First, the party must show that an attorney-client relationship formerly existed; the rule speaks in terms of "former client" and "former attorney." Second, the party must show that the current litigation is substantially related to the prior representation.[5] If these two showings are made, then the party seeking disqualification need not show that confidential information was actually transmitted to the attorney or that the attorney to be disqualified has recall of that information. Similarly, even if the attorney to be disqualified shows that he did not have access to or does not recall confidential information, this will not defeat the presumption which has been created. The problem arises here, however, not in connection with the second showing, but with the first.

### III.

■ It is true of course that disqualification of an attorney is a matter which rests within the sound discretion of the trial court and will not be overturned absent a showing of abuse. *O'Neil v. Bergan*, 452 A.2d 337, 344 (D.C.1982); *see also Mondello v. Mondello*, 118 A.D.2d 549, 499 N.Y.S.2d 9 (1986). Moreover, there is authority for the proposition that in " 'a disqualification situation, any doubt is to be resolved in favor of disqualification.' " 118 A.D.2d at 550, 499 N.Y.S.2d at 10 (citation

omitted).[6] Notwithstanding this, we conclude that the trial court, on the basis of the information before it, erred in disqualifying appellant's counsel.

It is useful first to set out in some detail the trial court's findings[7] or more accurately the lack of findings, as to the first showing—*i.e.*, the existence of an attorney-client relationship:

> [T]he nature of whether or not an attorney represents a client in the context in which matters must be held in confidence extends beyond mere payment of a fee.... [T]he circumstances surrounding the consultation provides some information about or the proper focus for whether or not an attorney-client relationship was established.... The plaintiff consulted with Mr. Sandground for approximately one hour for the purpose of discussing the recourse which should be taken as the result of a decision rendered by a judge of this Court including whether or not the decision was appropriate and whether or not an appeal should be taken and various strategies underlying that and other matters.... [T]his discussion was a two way discussion and although no fee was subsequently paid, in this Court's view, the circumstances provide a sufficient background to require some adherence to the Canons of Ethics....

While the trial court is surely correct that the existence of an attorney-client relationship should not turn upon whether a fee has been paid, the trial court erred in concluding "that the circumstances provide

---

5. In *Brown* the court had no reason to discuss the first part of this test. It was apparent that an attorney-client relationship existed since the attorneys facing disqualification "had served as counsel for the District of Columbia in two earlier transactions allegedly related to [the one at issue]." 486 A.2d at 40. The focus of the court was accordingly on whether the transactions were "substantially related."

6. Disqualification of an attorney is a serious step. Disqualification may severely affect the monetary interest and the reputation of an attorney. Moreover, disqualification negates a client's right to freely choose his counsel. *See Government of India v. Cook Industries, Inc.*,

569 F.2d 737, 739 (2d Cir.1978) ("there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters [courts] must be solicitous of a client's right freely to choose his counsel").

For this reason, trial courts take a cautious approach in disqualifying counsel. *See id.* at 739–40. The trial court here was obviously concerned about the gravity of disqualification in that it certified its decision for interlocutory appeal.

7. No written findings were made. Oral findings were made by Judge Wagner on June 24, 1986.

a sufficient background" to warrant disqualification. In point of fact, the trial court never specifically states that an attorney-client relationship was formed as a result of the consultation between appellee and Mr. Sandground. Rather, the trial court simply expresses its concern that the circumstances require adherence to the canons applicable to the attorney-client relationship; thus the finding is akin to one that states that disqualification is required to avoid the appearance of impropriety. We are troubled, however, that the brief consultation in the circumstances here, without more, could form the legal basis for an attorney-client relationship leading to an irrefutable presumption that the attorney consulted has received privileged information.

Our concern can be explicated through a comparison of two Massachusetts cases. In *Mailer v. Mailer,* 390 Mass. 371, 455 N.E.2d 1211 (1983), the appellate court affirmed the trial court's decision not to disqualify counsel. While there were no findings of fact by the trial court, the appellate court noted that the information allegedly transmitted in the initial consultation was of public record, that a lengthy interval of five years had passed since the time of the initial consultation, and that while the "fact that the wife had not paid a fee did not negate conclusively that relationship," it was worthy of note.

By contrast, counsel was disqualified in *DeLoury v. DeLoury,* 22 Mass.App. 611, 495 N.E.2d 888 (1986). The court concluded that, in contrast to *Mailer,* an attorney-client relationship existed. The court pointed out that in addition to the initial consultation the party seeking disqualification had requested the attorney in question to do legal work and that the wife had communicated information "of an intimate character." *DeLoury, supra,* 22 Mass. App. at 614–15, 495 N.E.2d at 890.

In the instant case, we are not convinced that a sufficient showing has been made to establish the existence of an attorney-client relationship. This case is closer to *Mailer* than *DeLoury.* Mr. Derrickson at no time considered Mr. Sandground to be his attorney and Mr. Sandground did not consider himself to be Mr. Derrickson's attorney. The alleged initial consultation was brief and Mr. Derrickson did not request Mr. Sandground to do any legal work for him. A lengthy interval (over eight years) has passed since the alleged initial consultation. And while the fact that no fee was paid does not negate the existence of an attorney-client relationship, it does add support to our conclusion.

As appellee correctly points out, citing *In re Lieber,* 442 A.2d 153 (D.C.1982), neither a formal agreement nor the payment of fees is necessary to create an attorney-client relationship. As *Lieber* makes clear, however, the existence of the relationship is a question of fact and is to be predicated on the circumstances of each case.

*Lieber* involved a disciplinary proceeding against an attorney who was assigned by the Superior Court to assist a criminal defendant but failed to fulfill his responsibility. On appeal from disciplinary proceedings, Lieber attempted to argue that no attorney-client relationship existed. Judge Nebeker, writing for a unanimous court, concluded that an attorney-client relationship had been formed. Judge Nebeker noted that the prisoner considered Lieber to be his attorney, and that Lieber placed his name on the roster of attorneys available for court appointment, and was formally appointed by the court. Under the circumstances, no one could refute that Lieber, for disciplinary purposes, was the prisoner's attorney.

Appellee is also most certainly correct when he points out that "the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has ... sought to employ him." D.C. CODE OF PROFESSIONAL RESPONSIBILITY EC 4–1 (1980). But this proves too little. The issue is whether an attorney-client relationship formerly existed and thus whether one is entitled to the benefits of an irrefutable presumption that confidences and secrets have been transmitted. Certainly, even if an attorney-client relationship did not exist,

a party has a right to expect that a lawyer whom he sought to employ will protect confidences and secrets imparted. But if an attorney-client relationship did not exist, the party will have to show that confidences and secrets were actually imparted. The party will not gain the benefit of an irrefutable presumption to disqualify counsel.

While appellee may not rely on *Brown*'s irrefutable presumption, appellee is still free to demonstrate to the trial court that actual confidences and secrets damaging to appellee in the pending action were imparted to Mr. Sandground. Of course, Mr. Sandground is also free to rebut such alle-gations and the ultimate resolution of this issue is within the sound discretion of the trial court.

Accordingly, the decision below is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

*Reversed & remanded.*