Garsh, J.
Plaintiffs commenced this action on April 30, 1990, for misrepresentation, breach of contract, breach of express and implied warranties and G.L.c. 93A violations with regard to their purchase of condominium units from the defendants. The complaint alleges, in part, misrepresentations concerning the common area percentages. The plaintiffs are seeking damages for nondisclosure of the allegedly illegal means by which their common area fees were set. Plaintiffs also contend that they were never told that a Land Court judgment concerning these common area percentages was a product of negotiations unrelated to the relative market value of the units. On July 13, 1993, a partial summary judgment was granted in favor of the defendants with respect to the alleged misrepresentations concerning the common area percentages insofar as those misrepresentations are alleged to give rise to a cause of action for misrepresentation or rescission. The alleged misrepresentations with respect to common area percentages *45 are still part of the c. 93A claims. Parties were ordered to file their joint pre-trial memorandum by July 19, 1993 and to appear, on that date, for a final pre-trial conference. Trial in this case is scheduled to commence on July 26, 1993.
On July 14, 1993, Messrs. Sylvia and Eisenberg of the law firm of Hinckley, Allen & Snyder filed a notice of appearance as attorneys for Harold A. Theran and Thomas Gordon Hendry, as trustees of Perkins Realty Trust and as Trustees of Chestnut Realty Trust, Harold A. Theran, individually, Cabot Estate Development Company, Old State Management Corp., Olympia and York Mass. Investments Corp., Olympia and York (U.S.) Holdings Corp., and Baden Real Estate Corp. (the Defendant Developers), and, sought, without opposition, a two-day continuance of the time for the filing by the parties of their joint pre-trial memorandum and for the pre-trial conference. Mr. Lane, a pro se plaintiff, immediately advised the Court that he was troubled by Hinckley, Allen & Snyder’s late appearance in this action because he had recently discussed the common area percentages involved in this action with a partner at that firm. Mr. Sylvia, upon being queried by the Court, declined, at that time, to agree that the attorneys working on this case would not consult with Mr. Errico, the partner with whom Mr. Lane had spoken.
On July 16, 1993, Mr. Lane moved to disqualify Hinckley, Allen & Snyder. On the same date, he filed a motion to reconsider that portion of the summary judgment dealing with the common area percentages. A hearing on Mr. Lane’s motion to disqualify was held on July 21, 1993, at which time the remaining plaintiffs also filed a motion to disqualify and the Defendant Developers filed their opposition, along with the affidavits of Messrs. Sylvia and Errico. At the hearing, the Court heard testimony from Mr. Lane, plaintiff Cecilia Newman, and Mr. Errico. Messrs. Lane and Errico were asked to describe, in general terms, the.nature of their communications, but not to disclose precisely what was said. Very late in the day following the hearing on the motion to disqualify Kopelman and Paige, Defendant Developer’s counsel, who were present at the disqualification hearing, sought leave to withdraw. That motion has not yet been acted upon.
For the reasons set forth below, this Court grants the motion to disqualify.
FINDINGS OF FACT
Mr. Lane first contacted Mr. Errico by letter on April 6, 1993. He advised Mr. Errico that he believed that the common area percentages were not being calculated in accordance with law and sought a meeting to discuss with Mr. Errico possible representation of him in connection with a challenge to the percentage interest calculations at Cabot Estates, a phased condominium development. Unlike this suit, which seeks damages and/or rescission based upon misrepresentations concerning the lawfulness, validity or propriety of the calculations of common area percentages, the suit Mr. Lane discussed with Mr. Errico would have sought to require the common area percentages to be changed.
After the initial letter, Mr. Lane spoke by telephone with Mr. Errico two or three times. Each conversation lasted less than ten minutes. They discussed the calculation of the common area percentages. Mr. Lane went into the complete background concerning how those percentages came about and how they were originally determined. Mr. Lane testified that some of the information he shared with Mr. Errico was confidential and that he assumed that his discussions were confidential. Mr. Errico testified that he did not believe that Mr. Lane had provided any confidential information. I find that some confidential information concerning common area percentages was transmitted. Moreover, Mr. Errico was not a passive listener. Mr. Lane testified that Mr. Errico gave “encouragement” to him and his affidavit states that he told Mr. Lane that his case would be difficult and his reasons for so advising. Further, Mr. Errico testified that they briefly discussed the governing statute, the prior Land Court action, and complaint filed in Land Court, as well as Land Court or Registry documents.
Prior to their first conversation, Mr. Errico was aware that the condominium complex at issue was the Cabot Estates. He did not ask Mr. Lane for the names of the parties who were adverse or potentially adverse to him. If, at the outset of his conversation with Mr. Lane, Mr. Errico had so inquired and if Olympia and York’s name had surfaced, Mr. Errico would have terminated communications with Mr. Lane because he was aware that Olympia and York is a client of Hinckley, Allen & Snyder. Mr. Lane transmitted some background information to Mr. Errico, such as Registry documents, on April 12, 1993, and on April 20, 1993, he sent Mr. Errico a copy of a letter he had written to the Chairman of the Cabot Estates Board of Trustees. Mr. Errico wrote to Mr. Lane on April 26, 1993, thanking him for the materials relating to the Cabot Estates and suggesting that Mr. Lane contact him the following week “to discuss where we go from here.” Mr. Lane’s next and last communication with Mr. Errico was on May 10, 1993, when he forwarded Mr. Errico another letter. Mr. Lane never met with Mr. Errico, was not billed for his time, nor has he paid Mr. Errico.
Other plaintiffs have shared work product with Mr. Lane, and he has benefitted from their research and strategy discussions. One such plaintiff, Ms. Newman, testified that she is troubled by the possibility that information she shared in confidence with Mr. Lane was transmitted to Hinckley, Allen & Snyder and believes that there is an appearance of impropriety even if Hinckley, Allen & Snyder cordons Mr. Errico off entirely from this litigation, as it ultimately repre *46 sented at the hearing on April 21, 1993, it would do and has done.
RULINGS OF LAW
In Massachusetts, the practice of law by members of the Massachusetts Bar is regulated by the “Canons of Ethics and Disciplinary Rules Regulating the Practice of Law” set forth in Rule 3:07 of the Supreme Judicial Court. Canon 4 requires a lawyer to preserve his client’s confidences and secrets. Canon 9 declares that a “lawyer should avoid even the appearance of impropriety.”
The initial question is whether an attorney-client relationship existed. Even without an express attorney-client relationship, there may exist an implied professional relationship with a prospective client. Westinghouse Elec. Corp. v. Ken-McGee Corp., 580 F.2d 1311 (7th Cir.), cert. denied, 439 U.S. 955 (1978). It is not necessary that a fee be paid or that the attorney have been retained. Mailer v. Mailer, 390 Mass. 371, 374 (1983). “It is sufficient that [the attorney] be consulted as to legal business with a view to possibly being retained.” Commonwealth v. O'Brien, 377 Mass. 772 (1979). See also Liacos, Handbook of Massachusetts Evidence (1981), at 183. It is undisputed that Mr. Errico was consulted with a view to possibly being retained. There were several written and telephonic communications. Mr. Errico advised Mr. Lane as to some of the basic legal considerations. Based upon these facts, I conclude that an attorney-client relationship between Mr. Errico and Mr. Lane was established. This is not an unjust result. Mr. Errico could have taken adequate measures at the outset of his first telephone conversation with Mr. Lane to ascertain the names of those with adverse interests. Even before speaking with Mr. Lane, Mr. Errico knew the nature of the advice being sought and the name of the condominium development at issue.
Having found an attorney-client relationship, the next question is whether the subject matter of the current suit is substantially related to the previous representation. It is. No more need be shown. T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265, 268 (S.D.N.Y. 1953). This Court may assume that during the course of the former representation, confidences were disclosed bearing on the subject matter of the representation and need not inquire into their nature or extent. Id. The “substantial relationship” standard protects a client who cannot prove that confidential information was imparted. It also avoids unseemly evidentiary hearings during which attorneys are pitted against former clients, each testifying as to the nature of their contacts and their respective beliefs as to whether information imparted, in fact, was or was not confidential.
This Court recognizes, however, that the Supreme Judicial Court has not yet decided whether to employ the “substantial relationship” test in analyzing the propriety of successive representations. Wellman v. Willis, 400 Mass. 494, 498 (1987). Alternatively, the motion to disqualify^ is allowed because Mr. Lane believed that his consultation with Mr. Errico was confidential and that what he told Mr. Errico would be held in confidence. Moreover, some confidential information was imparted by Mr. Lane and he has not consented to Hinckley, Allen & Snyder’s representation of the Defendant Developers. Mr. Lane’s belief that the consultation was confidential is “entitled to respect.” Deloury v. Deloury, 22 Mass.App.Ct. 611, 615 (1986).
Although the factual question as to whether confidential information was in fact transmitted is not free from doubt, Mr. Lane was a credible witness. Mr. Errico’s belief to the contrary is not persuasive evidence that no confidential information was imparted.[1] Where there is any doubt, such doubts should be resolved against successive representation if such representation “may” impinge upon the interests of Mr. Lane. Mailer, 390 Mass. at 375. That is particularly so where so little time has lapsed between Mr. Lane’s contacts with Mr. Errico and the notice of appearance just filed by Hinckley, Allen & Snyder. Where five years had elapsed since an initial and only consultation, and where no confidential information was used in the successive representation, the Supreme Judicial Court nevertheless stressed that the “facts in [that] case probably brings us as close to the outer limits as we shall want to go.” Id. Hinckley, Allen & Snyder has crossed those outer limits.
Disqualification is particularly appropriate given the command of Canon 9, although this Court is mindful that Canon 9 “should not be read to alter the ‘delicate balance’ created by the other canons between a client’s right to counsel of his choice and the maintenance of professional standards.” Wellman v. Willis, 400 Mass. 494, 503 (1987). For an attorney to represent an adverse interest in the facts of this case, where the time lapse between consultation and subsequent representation is so short, would create an appearance of impropriety and would serve to undermine the public’s confidence in the integrity of the legal profession.[2]
This motion does not arise in the context of the moving party waiting until the eve of trial to raise the disqualification issue. Masiello v. Perini Corp., 394 Mass. 842, 850 (1985). Nor is it being advanced as a harassment or dilatory tactic. Hinckley, Allen & Snyder sought to enter this case at the eleventh hour. Presumably, the Defendant Developers were advised by Hinckley, Allen & Snyder before that firm was asked to file its appearance that Mr. Lane might file a motion to disqualify. Mr. Errico states in his affidavit that before “agreeing to represent the Developer Defendants in this matter, my partner Robert Sylvia and I discussed extensively the question of whether a conflict of interest exists.” No effort was made to contact Mr. Lane to ascertain his position.
*47 Under these circumstances, I find that the motion to disqualify should be allowed.
ORDER
For the foregoing reason, it is hereby ORDERED that the motion to disqualify Hinckley, Allen & Snyder be and hereby is ALLOWED.

 The Court declined Hinckley, Allen & Snyder’s offer to have the Court review, in camera, the written communications between Mr. Lane and Mr. Errico. No file memoranda were made of the telephone conversations.

 In the circumstances of this case, the Court does not find that simply “screening ofF Attorneys Sylvia and Eisenberg would be appropriate. As it set forth in Mr. Errico’s affidavit, Mr. Errico reviewed the nature and extent of his contacts with Mr. Lane with his partner Mr. Sylvia. Moreover, there has been no showing of substantial hardship. The Defendant Developers relegate to a footnote in their Opposition the conclusory statement that “(b)ecause of the extensive relationship between Attorney Sylvia and the Olympia & York entities, and the imminent approach of trial, disqualification in the instant action would be of substantial hardship to the Defendant Developers." See Amoco Chemical Corp. v. D.C. MacArthur, 568 F.Supp. 42, 47 (N.D. Ga. 1983) (“Chinese wall" not appropriate when direct nexus between the former representation and the pending suit).