Lauriat, J.
Plaintiff, Elie J. Baghdady (“Baghdady”), brought this action against defendants, Lubin & Meyer, P.C. and Philip J. Crowe (collectively referred to as “Lubin & Meyer”), for legal malpractice. Baghdady’s Michigan attorney has filed a motion pro hac vice for admission to the court for the above-captioned matter. Baghdady has also filed a motion to disqualify Lubin & Meyer’s counsel. Lubin & Meyer has opposed both motions and has moved to strike the complaint and for costs and attorneys’ fees in connection with Baghdady’s disqualification motion. For the following reasons, Baghdady’s motion pro hcuc vice is ALLOWED and the motion to disqualify, the motion to strike the complaint, and the motion for costs and attorneys’ fees are DENIED.
FINDINGS OF FACT
In 1981, Baghdady contacted Posternak, Blankst-ein & Lund (“Posternak”), the law firm currently representing Lubin & Meyer, concerning possible representation of his interests in securities claims against Prudential-Bache Securities, Inc. (“Prudential”). When Baghdady rejected Posternak’s proposed fee agreement shortly thereafter, Posternak returned his papers and all contact between the law firm and the plaintiff ceased until October of 1991.
Baghdady then enlisted the services of the defendant, Lubin & Meyer, to represent him in the action against Prudential. Baghdady terminated his relationship with Lubin & Meyer in 1991. Subsequently, Baghdady retained the services of a Michigan attorney, Jack C. Chilingirian (“Chilingirian”), to act as trial attorney in the action against Prudential. That action was ultimately dismissed with prejudice for failure to timely prosecute the case, and while an appeal was pending, it was settled by the parties.
In October of 1991, Baghdady contacted Posternak to inquire as to whether the firm might consider representing him in a legal malpractice claim. Baghdady contends that he informed Posternak of the nature of his claims and disclosed privileged and confidential information. However, the court credits the representation of Posternak that the conversation amounted to a superficial inquiry that was terminated upon Posternak’s learning that Baghdady’s claim fell outside of its practice area of legal malpractice defense work. The court accepts Posternak’s assertion that the inquiry would have been even shorter had the potential defendant been revealed, because Lubin & Meyer has been Posternak’s client since 1986.
Baghdady eventually retained Chilingirian to represent him in the action against Lubin & Meyer. Chilingirian is a member in good standing with the Bar of the State of Michigan. He is also admitted to practice before the United States Supreme Court and the United States District Courts of Michigan. Chilingirian has not'been admitted to the Massachusetts Bar. The complaint in the present case was not signed by a Massachusetts attorney at the time it was filed. Subsequent to filing the complaint, an appearance on behalf of Baghdady was filed by Carmen Frattaroli (Frattaroli), a Massachusetts attorney.
The parties seek resolution of various motions. Baghdady’s Michigan attorney brought a motion pro hac vice, which was filed at the same time as the complaint. Baghdady also brought a motion to disqualify opposing counsel. Lubin & Meyer has moved to strike the complaint and for motion for costs and attorneys’ fees. A hearing on these motions was held on October 13, 1995.
DISCUSSION
I. Motion Pro Hac Vice
Under G.L.c. 221, §46A, “a member of the bar, in good standing, of any other state may appear, by permission of the court, as attorney or counselor, in any case pending therein, if such other state grants like privileges to members of the bar, in good standing, of this commonwealth.” A trial judge has significant discretion in deciding whether to admit an attorney pro hac vice. DiLuzio v. United Electrical, Radio & Machine Workers of America, Local 274, 391 Mass. 211, 215 (1984).
Lubin & Meyer contends that Chilingirian should be denied pro hac vice status because he will likely be called as a witness in his client’s present claim for legal malpractice. The court is entitled to deny a pro hac vice motion on the ground that the out-of-state attorney may be a material witness to the malpractice action. Merles v. Lerner, 391 Mass. 221, 224-26 (1984).
Nevertheless, “as a matter of policy, a litigant should not be limited in his choice of an attorney except for serious and articulable reasons.” DiLuzio, 391 Mass. at 219-20. Aside from general assertions made in Lubin & Meyer’s brief, there is thus far no clear indication that the testimony of Chilingirian would be material or irreplaceable in terms of the trial or resolution of this case. At this point in the case, it is not clear whether the potential testimony of Chilingirian could be presented through others, or whether the testimony would be merely cumulative or marginally relevant to the issues in dispute. Serody v. Serody, 19 Mass.App.Ct. 411, 414 (1985). Furthermore, there is no evidence that Chilingirian’s testi *526 mony would be otherwise adverse to Baghdady and therefore cause for denying this motion. Id.
Mindful that there would be expense to Baghdady as well as the deprivation of counsel of his choice if the pro hac vice motion be denied, this court will defer “to the best judgment of counsel and client” for the present time and allow the motion pro hac vice. Id. at 413. Chilingirian will be held to and bound by all rules of civil procedure, trial court rules, standing orders, administrative directives, and other rules governing and controlling the course and conduct of this action. Furthermore, the court reserves the right to reexamine the issue, as the circumstances warrant, of whether Chilingirian should be required to withdraw due to his role as a potential witness at the trial or other hearing in this action, id at 412.
II. Motion to Strike Complaint
Lubin & Meyer has moved to strike the Baghdady’s complaint and dismiss the action because that pleading does not contain the signature of an attorney admitted to the Massachusetts bar. The motion is brought pursuant to Mass.R.Civ.P. 11(a), which explicitly requires that “(e]very pleading of a party represented by an attorney shall be signed in his individual name by at least one attorney who is admitted to practice in this commonwealth.” According to the reporters’ notes attached to Rule 11, this requirement “ensures that all litigation in the courts of the Commonwealth will be the nominal responsibility of the member of a bar here, even if the litigation is in fact being conducted by out-of-state counsel admitted pro hac vice.”
Rule 11(a) does not require the imposition of sanctions against an attorney who violates its terms. However, a court may, in its discretion, strike the complaint and dismiss the cause of action. Mass.R.Civ.P. 11(a). The court in this case declines to exercise its discretionary power to sanction Baghdady by striking his complaint. In light of the recent appearance of attorney Frattaroli, as counsel for Baghdady, and this court’s allowance of the motion pro hac vice, the court deems it unnecessary to sanction the plaintiff in the requested manner. This does not change the fact that Chilingirian failed to adhere to the explicit dictates of Massachusetts Rules of Civil Procedure. The court strongly cautions Chilingirian and Frattaroli to avoid such mistakes in the future or else they — and their client — may be left to bear the burden of their errors.
III. Motion to Disqualify Counsel
The disqualification of an attorney from continued representation is a measure “that courts have invoked in appropriate circumstances to prevent improper disclosure of clients’ confidences, or to ameliorate the effects of such disclosures where they have occurred.” Masiello v. Perini Corp., 394 Mass. 842, 848 (1985) quoting Realco Servs., Inc. v. Holt, 479 F.Supp. 867, 871 (E.D. Pa. 1979). Disqualification of counsel, “as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.” Id. quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982). In deciding Baghdady’s motion to disqualify Posternak, the court must focus on Canons 4 and 9 of the Canons of Ethics and Disciplinary Rules, which currently govern members of the Massachusetts Bar. Massachusetts Supreme Judicial Court Rule 3:07, Disciplinary Rules 4-101 and 9-101.
Disciplinary Rule 4-101, entitled “Preservation of Confidences and Secrets of Clients,” prohibits the knowing disclosure or misuse of a client’s confidence or secret. Misuse of a client’s confidence or secret includes the use of that information to the disadvantage of the client. DR 4-101(B)(2). A confidence is “information protected by the attorney-client privilege under applicable law.” DR 4-101(A). A secret is “other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client.” Id.
The code is first and foremost “self-executing” — the court relies on counsel to use their best efforts to avoid situations in which disqualification may be warranted. Borman v. Borman, 378 Mass. 775, 787 (1979). When an attorney, in the exercise of his or her best judgment, determines that the employment in question will not bring him into conflict with the code, the court shall only disqualify that attorney if his or her continued participation will sully the image of the legal system or hinder the fair resolution of the action before the court. Id. at 788.
The conflict in representing a current client with interests adverse to those of a former client arises from the attorney’s duty under Canon 4 to preserve the former client’s confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994). “Even after termination of the attorney-client relationship, a lawyer remains bound by the Code ... to preserve these confidences.” Id.
Ultimately, it is essential to determine whether an attorney-client relationship existed between Posternak and Baghdady which would prompt the court to disqualify defendant’s counsel. “An attorney-client relationship need not rest on an express contract. An attorney-client relationship may be implied ‘when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.’ ” Id. quoting Devaux v. American Home Assurance Co., 387 Mass. 814, 817-18 (1983).
The facts presented to the court, including Baghdady’s explicit rejection of the terms of representation offered by Posternak back in 1981 during pre *527 liminary negotiations and Baghdady’s perfunctory inquiry in 1991, fail to give rise to an attorney-client relationship.[1] Although an attorney-client relationship “may be established through preliminary consultations,” Bays v. Theran, 418 Mass. at 690, the relationship here did not go beyond the inquiry stage and there was no counselling concerning legal considerations or strategy. Compare Mailer v. Mailer, 390 Mass. 371, 372-74 (1979). Furthermore, the court concludes that there was no entrustment of confidential material to or retention by Posternak on either occasion. Therefore, disqualification under Canon 4 is inappropriate, as Baghdady was never “represented” by Posternak.
The Canons of Ethics and Disciplinary Rules also dictate that “[a] lawyer should avoid even the appearance of professional impropriety.” Model Code of Professional Responsibility, Canon 9, appearing in S.J.C. Rule 3:07. However, “Canon 9 should not be read to alter the ‘delicate balance’ created by the other canons between a client’s right to counsel of his choice and the maintenance of professional standards.” Wellman v. Willis, 400 Mass. 494, 503 (1987) (citations omitted). “If Canon 9 is the only disqualification consideration, generally it is ‘simply too weak and too slender a reed on which to rest a disqualification order.’ ” Id. quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 723 (7th Cir. 1982). The facts surrounding this case do not suggest that Posternak’s continued representation of Lubin & Meyer “taints the legal system or the trial of the cause before [the court],” and thus Posternak’s disqualification in this case is unwarranted. Borman v. Borman, 378 Mass. at 788.
IV. Motion for Costs and Sanctions
“Court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics.” Gorovitz v. Planning Board of Nantucket, 394 Mass. 246, 250 n.7 (1985). When disqualification occurs as a result of the use of an improper motion, “the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process.” Borman v. Borman, 378 Mass. at 787.
Judges have the “authority and discretion to discourage such tactics through the imposition of costs." Masiello, 394 Mass. at 850. However, the court determines that it is unnecessary to impose costs or attorneys’ fees upon Baghdady. This motion for disqualification is not the result of the moving party waiting until the eve of trial, nor does it appear to have been advanced as a harassment or dilatory tactic. Bays v. Theran, 418 Mass. at 693. Although the facts of this case fail to warrant the disqualification of counsel, it was reasonable for Baghdady to raise this issue before the court. Absent a showing of bad faith or improper purpose, the court will refrain from penalizing Baghdady for making a disqualification motion — a motion whose general purpose is “maintaining the highest standards of professional conduct and scrupulous administration of justice.” Mailer v. Mailer, 390 Mass. at 373.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion pro hoc vice be ALLOWED. It is further ORDERED that plaintiffs motion to disqualify opposing counsel and defendant’s motion to strike the complaint and for costs and attorneys fees be DENIED.

Although time is not a controlling consideration, the lapse of time between the slightly more significant contact between Baghdady and Posternak in 1981 and the institution of this action further mitigates against disqualifying Posternak. See Mailer v. Mailer, 390 Mass. at 374.