SAMUEL BAYS & others[1] *vs.* HAROLD A. THERAN & another,[2] trustees,[3] & others.[4]

Suffolk. March 10, 1994. - September 23, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Attorney-client relationship, Disqualification.

In a civil action, the judge correctly allowed the plaintiffs' motion disqualifying a certain law firm from representing the defendants where a plaintiff and an attorney from the law firm had previously established an attorney-client relationship involving confidential communications with respect to the matter in issue in the civil action. [690-694]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1990.

A motion to disqualify was heard by *E. Susan Garsh*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert F. Sylvia* for the defendants.

*Miles E. Hoisington* for Samuel Bays & others.

---

[1]Elizabeth Bays, Martin A. Berezin, Sheldon and Marilyn Brecher, Lucille G. Cline, Jack and Charlotte Dunkless, Richard and Cecilia Newman, Malcolm and Ruth Rosenblatt, Betty Saunders, William and Edna Sbordon, John D. and Margaret A. Short, Carol L. Stolberg, and Susan S. Howe, all individually; Susan Needleman, trustee of the R/M Perkins Nominee Trust; and Earle Lane.

[2]William Hay. On appeal Thomas Gordon Hendry has been substituted for William Hay.

[3]Of the Perkins Realty Trust and the Chestnut Realty Trust.

[4]Harold Theran, individually; William Hay, individually; Cabot Estate Development Company; Old State Management Corp.; Olympia and York State Street Corp.; Olympia and York Mass. Investments Corp.; Olympia and York (U.S.) Holdings Corp.; Baden Real Estate Corp.; Bready Levin Cabot Corp.; Paul K. Bready, Jr., and Mordechai Levin, trustees of the Bready Levin Nominee Trust; Bready Levin Nominee Trust; Bready Levin Development Company; and Mordechai Levin, individually.

*Earle Lane*, pro se, was present but did not argue.

O'CONNOR, J. The plaintiffs, unit owners in the Cabot Estate Condominium, commenced this action in the Superior Court on April 30, 1990, alleging misrepresentation, breach of contract, breach of express and implied warranties, fraudulent conveyance and violation of G. L. c. 93A (1992 ed.), in connection with the purchase of their units. This is the "developer defendants' "[5] appeal from a judge's order issued on July 22, 1993, as orally modified on July 26, 1993, disqualifying the law firm, Hinckley, Allen & Snyder, from representing them in connection with an upcoming trial concerning the c. 93A claims. We conclude that the modified disqualification order struck the appropriate balance in this case between a client's right to counsel of choice and an attorney's responsibility to preserve client confidences and to avoid even the appearance of impropriety. See *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983); S.J.C. Rule 3:07, Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, Canons 4 and 9, as appearing in 382 Mass. 778, 795 (1981). There was no error.

We begin by summarizing the procedural history of this case and the relevant facts found by the Superior Court judge. The plaintiffs' third amended complaint alleges numerous factual bases and theories of liability, including common law and G. L. c. 93A liability based on misrepresentations concerning common area percentages. As the judge explained in her initial disqualification order, "[t]he plaintiffs are seeking damages for nondisclosure of the allegedly illegal means by which their common area fees were set. [They] also contend that they were never told that a Land Court judgment concerning these common area percentages was a

---

[5]Harold A. Theran and Thomas Gordon Hendry, trustees of the Perkins Realty Trust, and trustees of Chestnut Realty Trust; Harold A. Theran, individually; Cabot Estate Development Company; Old State Management Corp.; Olympia & York Mass. Investments Corp.; Olympia & York (U.S.) Holdings Corp.; and Baden Real Estate Corp. Only these "developer defendants" are parties to the appeal.

product of negotiations unrelated to the relative market value of the units."

On July 13, 1993, the judge granted partial summary judgment in favor of the developer defendants, who were represented by the law firm, Kopelman and Paige, on the common law misrepresentation claims based on alleged misrepresentations concerning the validity of the common area percentages. Summary judgment on those claims was allowed on the ground that (1) res judicata precluded the plaintiffs from litigating the legality of the common area percentages or the legality of the procedures used to determine those percentages since the percentages were established by a Land Court judgment pursuant to agreement in a prior suit concerning the validity of the percentages and involving parties with which the plaintiffs were in privity; and (2) the plaintiffs had notice of this agreement and of the set percentages when they purchased their units. Further, the judge determined, the third amended complaint did not allege nondisclosure of the method used to determine the common area percentages as a separate basis for a common law misrepresentation claim. The judge denied the developer defendants' motion for summary judgment on the corresponding c. 93A claims.

On July 14, the day after partial summary judgment was granted in favor of the defendants, Attorneys Robert F. Sylvia and Eric F. Eisenberg of Hinckley, Allen & Snyder filed a notice of appearance on behalf of the developer defendants. Plaintiff Earle Lane, appearing pro se, immediately notified the judge that he was troubled by Hinckley, Allen & Snyder's appearance in the action because he had recently discussed the common area percentages involved in the case with Attorney V. Douglas Errico, one of that firm's real estate partners. Sylvia, upon being queried by the judge, declined to agree that none of the firm's attorneys working on the case would consult with Errico and, on July 16, Lane moved to disqualify the firm. The other plaintiffs joined Lane's motion on July 21.

After hearing testimony from Errico, Lane, and the plaintiff Cecilia Newman, the judge found the following facts. Lane first communicated with Errico by letter on April 6, 1993, and advised Errico that he believed the common area percentages at Cabot Estates had not been calculated in accordance with law. He requested a meeting to discuss possible representation in connection with a suit to require that those percentages be changed. Lane subsequently spoke with Errico two or three times by telephone for less than ten minutes on each occasion. During these conversations, Lane and Errico discussed the calculation of the common area percentages and "Lane went into the complete background concerning how those percentages came about and how they were originally determined." Lane also forwarded to Errico some background information, including "Registry documents" and copies of letters he had written and received. According to the judge's memorandum, Errico testified that he and Lane "briefly discussed the governing statute, the prior Land Court action, and complaint filed in Land Court, as well as Land Court or Registry documents." The judge found that Errico advised Lane with respect to some of the basic legal considerations. As a result of their conversations, the judge found, "some confidential information concerning common area percentages was transmitted" by Lane to Errico. Lane never met with Errico, was not billed for Errico's time, and has not paid Errico. Lane's last communication with Errico occurred on May 10, 1993, when Lane forwarded a letter to Errico.

Based on those findings, the judge concluded that an attorney-client relationship had been established. She allowed the motion to disqualify on the ground that the subject matter of the current action was substantially related to Errico's prior representation of Lane, and that Errico's current representation of the developer defendants was therefore presumptively improper. See *T.C. Theatre Corp.* v. *Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) ("the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears

on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent"). Recognizing, however, that this court has not yet decided whether the "substantial relationship" test should be employed in the Commonwealth to analyze the propriety of successive representations, see *Wellman* v. *Willis*, 400 Mass. 494, 498 (1987), the judge alternatively allowed the motion to disqualify on the ground that Lane imparted some confidential information to Errico, that Lane did not consent to the firm's subsequent representation of the developer defendants, and that Lane's belief that his consultation with Errico was confidential was "entitled to respect." See *Deloury* v. *Deloury*, 22 Mass. App. Ct. 611, 615 (1986). An order disqualifying the firm was entered on July 22.

On the scheduled trial date, July 26, in an effort to reduce jury confusion and trial time, the judge severed for later trial the fraudulent conveyance and those G. L. c. 93A claims that related to the common area percentages. Apparently in response to an indication by Kopelman and Paige that it was unprepared to proceed to trial since it had been "[e]ffectively replaced as counsel" several weeks earlier, the judge orally amended her disqualification order to allow Hinckley, Allen & Snyder to represent the defendant developers in the trial which was about to proceed and would no longer involve allegations concerning the common area percentages. Permission for Hinckley, Allen & Snyder to participate in that portion of the trial was conditioned on Errico's isolation from the trial attorneys participating in the case.

On July 29, the judge severed all issues involving G. L. c. 93A, thereby causing Allen, Hinckley & Snyder to be disqualified from participating in any portion of the contemplated separate G. L. c. 93A trial. Then, on July 30, consistent with her July 13 ruling concerning the res judicata effect of the Land Court judgment, the judge granted partial sum-

mary judgment in favor of the developer defendants on the portion of the c. 93A claims alleging that the common area fees had been illegally established. However, since the judge did not grant summary judgment on the c. 93A claims insofar as they are predicated on a failure to disclose that the common area percentages were the product of negotiations unrelated to the relative values of the units, the severed portion of the dispute continues to involve allegations concerning the common area percentages. The parties have stipulated to the dismissal with prejudice of the counts in the third amended complaint asserting claims for common law misrepresentation, breach of contract, and breach of warranty, so that only the separate G. L. c. 93A trial remains.

The threshold question in this appeal is whether an attorney-client relationship existed between Errico and Lane by virtue of the preliminary consultations. Contrary to the defendant developers' contention, there was no error in the judge's conclusion that such a relationship was established. As we have previously observed, "An attorney-client relationship need not rest on an express contract. An attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.' " *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817-818 (1983), quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). Such a relationship may be established through preliminary consultations, even though the attorney is never formally retained and the client pays no fee. See *Mailer* v. *Mailer*, 390 Mass. 371, 374 (1983) (whether a client has paid an attorney "a fee is not conclusive as to the existence of [an] attorney-client relationship"); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979) ("[t]he attorney-client privilege may extend to preliminary communications looking toward representation even if representation is never undertaken"). The facts found by the judge — that Lane communicated with Errico by mail and

telephone with a view to possibly retaining him, that Lane and Errico discussed various aspects of a potential suit, and that Errico counselled Lane concerning some of the basic legal considerations involved in the suit — warranted the judge's conclusion that an attorney-client relationship had been formed.

The Canons of Ethics and Disciplinary Rules Regulating the Practice of Law prohibit a lawyer from knowingly using "a confidence or secret of his client to the disadvantage of the client." S.J.C. Rule 3:07, DR 4-101 (B) (2), as appearing in 382 Mass. 778 (1981). "The conflict of interest in representing a current client with interests adverse to those of a former client arises from the attorney's duty under Canon 4 to preserve his client's confidences and secrets. Even after termination of the attorney-client relationship, a lawyer remains bound by the Code [of Professional Responsibility] to preserve these confidences." *Masiello* v. *Perini Corp.*, 394 Mass. 842, 847 (1985), quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1315 (1981). Under the "substantial relationship" test, a subsequent representation is proscribed "on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client. The [former] client need never prove that the attorney *actually* misused the confidences to the client's disadvantage. Instead he must prove only the existence of the tempting *situation* by showing (1) that an attorney-client relationship existed in the former legal representation, and (2) that the former and current representations are both adverse and substantially related." *Id.* at 1318. Thus, the "substantial relationship" test operates by assuming that confidences were transmitted in the former attorney-client relationship.

As the judge recognized, this court has not yet determined whether to adopt that approach in resolving problems of successive representation. See *Wellman* v. *Willis, supra* at 498; *Masiello* v. *Perini Corp., supra* at 848-849 n.5. The devel-

oper defendants argue that, in any event, we should not apply that test in a situation, such as this, in which the former attorney-client relationship consists merely of preliminary consultations. The defendant developers argue with some force that the assumption that confidences have been transmitted is far less reliable in the context of preliminary consultations about possible representation, as here, than in the context of full representation. However, this case does not require us to decide when, if ever, the "substantial relationship" test is the appropriate test for analyzing the propriety of successive representations. Here, the judge specifically found not only that Lane had believed that his consultation with Errico was confidential, but also that confidential information concerning common area percentages had actually been transmitted by Lane to Errico.

In *Mailer* v. *Mailer, supra,* the plaintiff in a divorce case had previously consulted the defendant's attorney concerning the divorce. Observing that the plaintiff had consulted the attorney only once, five years earlier, for approximately one hour, and that nothing in the record required the judge "to believe that either the plaintiff disclosed or [the attorney] learned anything beyond that which was on [the initial intake form] or which had been published in the Boston Globe," this court concluded that there was no reversible error in the judge's denial of the plaintiff's motion to disqualify, but that the facts of the case brought us "as close to the outer limits as we shall want to go." *Id.* at 374-375.

The judge's explicit finding in this case that Lane had transmitted some confidential information to Errico, and the potential overlap of the issues involved in the matter about which Lane and Errico consulted and the issues in the upcoming trial, lead us to agree with the judge that Hinckley, Allen & Snyder crossed the "outer limits" to which we referred in *Mailer* v. *Mailer, supra.* See *Deloury* v. *Deloury, supra* at 614-615 (the "outer limits" established by *Mailer* were crossed where an attorney appeared against a former client who had imparted confidential information at a preliminary consultation held approximately eighteen months prior

to the attorney's subsequent representation of the adverse party). We also agree with the judge that that result finds support in the fact that "so little time . . . lapsed between Mr. Lane's contacts with Mr. Errico and the notice of appearance . . . filed by Hinckley, Allen & Snyder." As the judge noted, "Disqualification is particularly appropriate [in this case] given the command of Canon 9 [a lawyer should avoid even the appearance of professional impropriety]. . . . For an attorney to represent an adverse interest in the facts of this case, where the time lapse between consultation and subsequent representation is so short, would create an appearance of impropriety and would serve to undermine the public's confidence in the integrity of the legal profession." "This motion [for disqualification]," the judge observed, did "not arise in the context of the moving party waiting until the eve of trial to raise the disqualification issue. *Masiello* v. *Perini Corp.*, 394 Mass. 842, 850 (1985). Nor is it being advanced as a harassment or dilatory tactic. Hinckley, Allen & Snyder sought to enter this case at the eleventh hour."

We disagree with the developer defendants' contention that the judge should have conducted an in camera hearing to inquire into the specific content of the communications between Lane and Errico before concluding that some confidences were transmitted. At the July 21 evidentiary hearing, the judge inquired as to the nature, topics, and extent of the communications between Lane and Errico, but instructed Lane not to discuss specifics so as not to compromise any privilege he might have. Our review of the hearing transcript indicates that, given the description of the communications, the court reasonably could infer that confidential information was transmitted and that in camera hearings concerning the details of Lane and Errico's unrecorded oral communications would not have been helpful. Furthermore, although the developer defendants offered to produce copies of the Lane-Errico correspondence for the judge's in camera inspection, they did not indicate at the hearing that such a procedure was critical to their position.

We shall not disturb the judge's discretionary determination that "screening" Errico from this case where allegations of misrepresentations concerning the common area percentages are at issue would be insufficient to protect Lane's confidences and the public's confidence in the integrity of the legal profession. Also, the fact that Errico has recently left Hinckley, Allen & Snyder does not require alteration of the balance struck by the judge between a client's right to counsel of choice and an attorney's responsibility to preserve client confidences and to avoid even the appearance of impropriety.

For the reasons stated, we affirm the order of disqualification.

*So ordered.*