Toomey, J.
Plaintiff Arthur J. Gallagher & Co. (“Gallagher”) brought this action seeking injunctive relief against a former employee and his new employer to enforce non-solicitation agreements and prevent disclosure of confidential and proprietary business information. The matter is presently before the court on plaintiffs motion to disqualify defendants’ counsel. For reasons set forth below, the motion is denied.
*141 BACKGROUND
On August 31, 1993, John J. Hayden (“Hayden”), Robert P. Powers (“Powers”) and Paul H. Barry (“Barry”), principal stockholders of Stark, Johnson & Stinson, Inc. (“SJS”), an insurance agency, soldSJS’s assets to Gallagher, an insurance brokerage and agency with an office in Westborough, Massachusetts. As part of the transaction, Hayden, Powers and Barry entered into an “Agreement and Plan of Reorganization” (hereinafter referred to as “Acquisition Agreement”) with Gallagher and subsequently became the buyer’s employees. On August 31, 1993, Hayden signed an employment agreement with Gallagher (“Employment Agreement”). Both the Acquisition and Employment Agreements contained non-competition provisions which restricted the ability of the sellers from soliciting Gallagher customers in the event that they left Gallagher’s employment.
During negotiations for the purchase of SJS, which commenced in 1992 and continued until the sale in 1993, attorney David A. Bakst (“Bakst”) of the law firm Morrison, Mahoney & Miller (“MMM”) represented SJS and Hayden, Powers and Barry.
On December 28, 1994, Powers purchased a portion of Gallagher’s business involving the personal insurance lines for individual customers. Thereafter, Powers formed his own insurance agency through which he conducted this newly purchased personal insurance business.
On June 2, 1995, Hayden and Gallagher agreed that Hayden would resign as an employee of Gallagher. On July 6, 1995, the terms of Hayden’s resignation were reduced to a written agreement (hereinafter referred to as the “Resignation Agreement”). The Resignation Agreement included a provision in which Hayden agreed that if contacted by Gallagher customers, he would encourage individual personal insurance customers to stay with Powers. On September 30, 1995, Hayden ceased employment with Gallagher. Hayden subsequently joined Braley & Wellington Insurance Agency (“B&W j located in Worcester, Massachusetts.
While Hayden was negotiating with Gallagher about his resignation from that company, Bakst rendered legal advice to Hayden, reviewed documents relating to his resignation, and discussed the terms of that resignation with representatives of Gallagher, including Daniel Penni, Area President, and Carl Fasig, in-house counsel for Gallagher. After the execution of Hayden’s Resignation Agreement with Gallagher in 1995, Gallagher retained MMM to assist it in the creation of a risk retention group, which involved creating a corporation through the preparation of legal documents and obtaining approval from the Massachusetts Division of Insurance (hereinafter referred to as the “Regulatory Matters”). The legal work performed by MMM on these Regulatory Matters was completed by December 1995. Since December 1995, MMM has not rendered any legal services to Gallagher.
On February 23, 1996, Gallagher filed suit against Hayden and B&W, claiming that Hayden and B&W solicited insurance business in violation of the Acquisition Agreement, the Employment Agreement, and the Resignation Agreement and alleging that Hayden breached an implied covenant of good faith and fair dealing, misappropriated business opportunities, committed fraud, interfered with Gallagher’s advantageous and contractual relationships, and violated M.G.L.c. 93A. The suit also asserted that Hayden and B&W misappropriated Gallagher’s trade secrets and confidential information and were unjustly enriched by their actions. Defendants filed a third-party claim against Powers alleging that Powers and Gallagher conspired together to use the instant litigation as means to restrain Hayden and B&W from competing fairly for insurance business. At the time of suit, Barry was employed as Area Senior Vice President with Gallagher. MMM is representing Hayden and B&W, the defendants in the instant action.
DISCUSSION
Simultaneous Representation
Plaintiff contends that MMM currently represents plaintiff in connection with ongoing Regulatory Matters while, at the same time, MMM represents the defendants in the instant case. That simultaneous representation, plaintiff maintains, is violative of the Canons of Ethics.
Disciplinary Rule 5-105(B), appearing in S.J.C. Rule 3:07, 382 Mass. 781 (1981), does prohibit an attorney from acting on behalf of a client in one action and simultaneously acting against that client in a second action. “A lawyer shall not continue multiple employment... if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).”[2] Concurrent representation even on unrelated matters constitutes conflict. “Acting for a client in one action and against the same client in another action constitutes ‘representing differing interests’ within the meaning of DR 5-105(B).’’ McCourt Co., Inc. v. FPC Properties, Inc., 386 Mass. 145, 146 (1982). Those precepts have not, however, been breached at bar.
MMM completed legal work for Gallagher on the Regulatory Matters in December 1995. Since December 1995, MMM has not rendered any legal services to Gallagher. Plaintiff filed the instant complaint in February 23, 1996. Accordingly, disqualification is not warranted on the basis of simultaneous representation because MMM completed its regulatory work for plaintiff prior to commencement of this action.
Successive Representation
The disqualification of an attorney from continued representation is a measure “that courts have invoked in appropriate circumstances to prevent improper *142 disclosure of clients’ confidences, or to ameliorate the effects of such disclosures where they have occurred.” Masiello v. Perini Corp., 394 Mass. 842, 848 (1985) quoting Realco Servs., Inc. v. Holt, 479 F.Supp. 867, 871 (E.D. Pa. 1979). Disqualification of counsel, “as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.” Id., quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982).
In deciding plaintiffs motion to disqualify MMM, the court must focus on Canons 4 and 9 of the Canons of Ethics and Disciplinary Rules, SJC Rule 3:07, 382 Mass. 778 (1981), which currently govern members of the Massachusetts Bar. Disciplinary Rule 4-101, entitled “Preservation of Confidences and Secrets of a Client,” prohibits the knowing disclosure or misuse of a client’s confidence or secret. Misuse of a client’s confidence or secret includes the use of that information to the disadvantage of the client. DR 4-101 (B)(2). A confidence is “information protected by the attorney-client privilege under applicable law.” DR 4-101(A). A secret is “other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.” Id.
The code is first and foremost “self-executing” — the court relies on counsel to use their best efforts to avoid situations in which disqualification may be warranted. Borman v. Borman, 378 Mass. 775, 787 (1979). When the attorney, in the exercise of his or her best judgment, determines that the employment in question will not bring him into conflict with the code, the court shall only disqualify that attorney if his or her continued participation will sully the image of the legal system or hinder the fair resolution of the action before the court. Id. at 788.
The conflict in representing a current client with interests adverse to those of a former client arises from the attorney’s duty under Canon 4 to preserve his client’s confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994). “Even after termination of the attorney-client relationship, a lawyer remains bound by the code [of Professional Responsibility] to preserve these confidences.” Id., quoting Masiello v. Perini Corp., supra at 847.
Gallagher contends that MMM should be disqualified pursuant to DR 4-101 because Bakst had previously represented Powers, a cross-claim defendant in the instant action, and Barry, a Vice President of Gallagher.[3] It is uncontested that attorney-client relationships existed between Bakst and Powers and Bakst and Barry from 1992 to August, 1993 during the sale of SJS to Gallagher. Throughout that transaction, however, Bakst never had an attorney-client relationship with Gallagher. Moreover, Barry and Powers were not employees of Gallagher at that point. Secrets of Gallagher were not improperly obtained by Bakst during his representation of Barry and Powers. Disqualification under DR 4-101, therefore, is not warranted because Bakst did not receive confidences or secrets of Gallagher that could now be used against it in the case at bar.
Given that MMM completed legal work for Gallagher on the Regulatory Matters in December, 1995, the court must also examine the facts surrounding that representation to determine whether there is a potential conflict under DR 4-101. The court must consider whether MMM received any confidences during its representation of Gallagher in the Regulatory Matters that could potentially be used against Gallagher in the instant action. The parties do not dispute that an attorney-client relationship existed between MMM and Gallagher. The Regulatory Matters involved organizing risk purchasing groups and obtaining regulatory approvals. No litigation was involved in the Regulatory Matters. The claims at bar arise from a cause entirely distinct from the Regulatory Matters, namely Hayden and B&W’s alleged solicitation of Gallagher’s customers. No compelling evidence has been presented by plaintiff to suggest that any confidences which may have been disclosed by Gallagher to MMM during the routine agency filing matter might be used against Gallagher in the present case. As a result, disqualification is not required by MMM’s involvement on behalf of Gallagher in the Regulatory Matters.
The Canons of Ethics and Disciplinary Rules also dictate that “[a] lawyer should avoid even the appearance of professional impropriety.” S.J.C. Rule 3:07, Canon 9, 382 Mass. 795 (1981). However, “Canon 9 should not be read to alter the ‘delicate balance’ created by the other canons between a client’s right to counsel of his choice and the maintenance of professional standards” Wellman v. Willis, 400 Mass. 494, 503 (1987) (citations omitted). “If Canon 9 is the only disqualification consideration, generally it is ‘simply too weak and too slender a reed on which to rest a disqualification order.’ ” Id. quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 723 (7th Cir. 1982). The facts surrounding this case do not suggest that MMM’s continued representation of Hayden and B&W “taints the legal system or the trial of the cause before [the court],” and thus MMM’s disqualification under Canon 9 is unwarranted.
Withdrawal as Counsel When Lawyer Becomes a Witness
Gallagher argues that MMM should be disqualified because it may call Bakst as one of plaintiffs witness at trial to testify as to the enforceability of the non-competition covenants within the Acquisition Agreement and the intent of the parties in the Resignation Agreement. Disciplinary Rule 5-102(B) provides “If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness *143 other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.” The Appeals Court has cautioned that the Canons of Ethics should not be “brandished for tactical advantage.” Serody v. Serody, 19 Mass.App.Ct. 411, 414 (1985). As a result, the court should not automatically disqualify counsel if he is, in fact, called upon to testify by opposing counsel. The Appeals Court notes, “If. . . the evidence sought from opposing counsel could as easily be adduced through others, or the lawyer’s testimony would be merely cumulative or marginally relevant, it may be desirable to exclude the proffered evidence or to admit the evidence and let the lawyer witness stay in the case.” Id.
Upon review of the record, disqualification of MMM on the grounds that Bakst may be called as a witness by opposing counsel is premature. At this point, without discovery, it is not clear that Bakst will be a necessary witness for the plaintiff. Furthermore, evidence about enforceability of the agreements or the intent of the parties may be more appropriately adduced from the actual parties to the agreements.
ORDER
For the foregoing reasons, it is therefore ORDERED that disqualification of Morris, Mahoney & Miller as counsel for the defendants’ is DENIED.

 DR 5-105(c) permits simultaneous representation in cases to which DR 5-105(B) applies provided that there is consent of the parties and it is “obvious” that the attorney can “adequately represent the interest" of each of the clients. There is no suggestion of consent at bar and, accordingly, DR 5-105(c) has no applicability to the instant dispute.

 Gallagher maintains that the “substantial relationship” test should be used as a basis on which to proscribe this subsequent representation. However, the Supreme Judicial Court has declined to adopt that test. Bays v. Theran, supra at 691-92.