Lauriat, J.
Roger D. Feldman, an attorney and a defendant in this legal malpractice action, has moved to disqualify the plaintiffs’ counsel, William F. Looney, Jr. (“Looney”) and the law firm of Looney & Grossman, LLP (“Looney & Grossman”), from further representation of the plaintiffs on the ground that he once sought legal advice from attorney Stuart F. Grossman (“Grossman”), a partner in Looney & Grossman.
After an initial hearing, the court decided to hold an evidentiary hearing on Feldman’s motion to allow fact-finding on the issues of (1) whether an attorney-client relationship was formed between Feldman and Grossman in 1991; (2) if so, whether any such attorney-client relationship resulted in the communication of confidential information; and (3) if so, whether any such confidential information is so related to the instant action as to create potential prejudice to Feldman or the appearance of impropriety by Looney & Grossman’s continued representation of the plaintiffs.
The court conducted an evidentiary hearing on March 31, 1997. It heard the testimony of Feldman and Joseph Bodoff, Esq. The parties agreed that the court could also consider as evidence the Affidavits of Grossman, Looney and Lorraine Curry. Finally, the court received in evidence five numbered exhibits.
Upon consideration of the credible testimony and affidavits of the witnesses, and the exhibits submitted by the parties, and the reasonable inferences to be drawn therefrom, the court makes the following findings of fact, rulings of law, and order on the Defendant Feldman’s Motion to Disqualify Plaintiffs’ Counsel.
FINDINGS OF FACT
1. Feldman was the managing partner of the Boston law firm of Gaston & Snow (“G & S”) from January, 1986 until May, 1991. In 1988, Feldman hired the Boston law firm of Bingham, Dana & Gould (“BD&G”) to defend G & S and all its then and former (since 1975) partners against a legal malpractice action brought by Margaret C. Williams and others as a result of allegedly negligent tax and estate planning advice given by several G & S partners in 1975 and 1976.
2. By early 1991, Feldman had become personally concerned about the financial problems of G & S, including those raised by the then pending Williams action. He wanted to review his personal financial situation and to protect his assets, if possible, from creditors of G & S if the firm should ever fail. Feldman knew Grossman to be a bankruptcy attorney. Feldman had known Grossman professionally since the late 1970’s. They had worked together from time to time *574 thereafter with others from their firms on matters relating to two clients.
3. At some point in late Februaiy, 1991, Feldman and Grossman met for lunch at Montillio’s, a cafeteria-style restaurant in the financial district in Boston. Feldman did not recall whether he initiated the meeting or whether it was specifically for the purpose of talking to Grossman about his personal financial situation. The lunch meeting lasted approximately one hour, during which time Feldman and Grossman exchanged social pleasantries and discussed matters relating to one of their joint clients. Feldman also told Grossman of the general nature of his personal financial concerns. Although Feldman also asserted that he told Grossman details of his personal financial situation and that Grossman gave him advice about protecting his personal assets, Grossman has no record or memory of the meeting or of ever having spoken to Feldman about his personal affairs. The court credits Feldman’s testimony that he met with Grossman in late Februaiy, 1991, but does not find that he shared any specifics with Grossman, about his personal financial situation or received from Grossman any carefully considered legal advice about those matters. Neither Feldman nor Grossman took any notes or exchanged any documents at their luncheon meeting.
4. On May 9, 1991, Feldman attended a dinner organized and sponsored by the Anti-Defamation League (“ADL”) at which Grossman and members of his family were also present. During a reception preceding the dinner, in a large room populated by a substantial number of dinner guests, Feldman spoke to Grossman about his activities regarding his personal financial matters since their luncheon in late February, 1991. This conversation lasted five to ten minutes. No notes were taken and no documents were exchanged. Grossman has no memory of this meeting or of any conversation with Feldman at the ADL dinner.
5. In or about May 1991, Feldman resigned as managing partner at G & S. In June, 1991, after a trial on the issue of liability in the Williams case, a Superior Court judge made findings and rulings and ordered judgment against G & S. In or about September, 1991, Feldman resigned as a partner in the firm. In October, 1991, bankruptcy proceedings concerning G & S were commenced.
6. On September 12, 1994, Looney wrote a letter to Feldman in which he stated that he represented several former partners of G & S, and that his letter was “a written demand for relief under G.L.c. 93A, §9 by [those former partners] against [Feldman] for . . . unfair or deceptive acts or practices, resulting in . . . injuries [to the former partners].” A similar letter was presumably written to BD&G. Although Feldman was apparently outraged at Looney’s letter, and considered Looney to have a conflict of interest because of Feldman’s 1991 meetings with Grossman, he did not respond to Looney’s letter or advise Looney or Looney & Grossman of the asserted conflict of interest at that time.
7. On October 7, 1994, Looney’s clients entered into a written agreement with Feldman and BD&G tolling the statute of limitations on their possible legal claims against Feldman and BD&G pending the final resolution of the Williams case. On August 8, 1996, the Supreme Judicial Court issued its decision in Williams v. Ely, 423 Mass. 467 (1996). On September 9, 1996, Feldman wrote a letter to Looney, in response to Looney’s letter of September 12, 1994. In that letter, Feldman stated, inter alia, that “it is inappropriate for your firm to represent anyone in a case brought against me individually. On more than one occasion your firm rendered legal advise [sic] to me related to the bankruptcy of Gaston & Snow and my personal situation. There is a conflict of interest that exists, and I do not waive it. I will object to your firm acting against me in this matter.”
8. On October 7, 1996, Looney filed the present action against Feldman and BD&G. On January 27, 1997, Feldman filed his motion to disqualify Looney and Looney & Grossman from further representing the plaintiffs in this action.
9. Looney & Grossman has no files in the name of Feldman, and has no record of any such file being opened. Grossman never billed Feldman for any legal matter and there is no record that Feldman was ever a client of Looney & Grossman. Neither Grossman nor anyone else at Looney & Grossman has given Looney any confidential information about Feldman.
RULINGS OF LAW
In considering a motion for disqualification, the court must reconcile the right of a person to the counsel of his choice and the need to maintain high standards of professional conduct. Mailer v. Mailer, 390 Mass. 371, 373 (1980). It must strike an appropriate balance “between a client’s right to counsel of choice and an attorney’s responsibility to preserve client confidences and to avoid even the appearance of impropriety.” Bays v. Theran, 418 Mass. 685, 686 (1994).
I. Attorney-Client Relationship
When a disqualification motion is brought, the threshold question is whether an attorney-client relationship ever existed between the parties. Bays v. Theran, 418 Mass. 685 (1994). An attorney-client relationship need not be based on an express contract, and may be implied through preliminary consultations even where the client never pays a fee. Id. at 690. An attorney-client relationship is likely to involve the •transmission of confidential information and the provision of legal advice. Mailer, 390 Mass. at 374; Bays, 418 Mass. 690-91. In Bays, condominium owners brought suit against the developers of the condominium units. The owners sought to disqualify the *575 developers’ counsel on the ground that one of the owners had recently consulted with an attorney from the same firm about a matter relating to the condominiums.
As a result of its evidentiary hearing in Bays,[1] the trial court found that two or three telephone conversations took place between the owner and the attorney, during which statutes and other binding legal authoriiy was discussed; that the owner sent, by mail, certain confidential documents to the attorney; and that the attorney provided some legal advice to the owner. The S.J.C. affirmed the trial court judge’s finding that these facts demonstrated that an attorney-client relationship had been formed. Id. at 691.
In the present case, the court concludes that Bays is distinguishable and that no attorney-client relationship between Grossman and Feldman was ever formed. First, and perhaps most foremost, the two meetings between Feldman and Grossman that are cited as the basis of their attorney-client relationship occurred in public settings. It seems highly unlikely that two experienced attorneys would choose settings such as a luncheon cafeteria and a dinner function as appropriate places for attorney-client meetings. Compare Bays, 418 Mass. at 688 (conversations took place on telephone). See also Mailer, 390 Mass. at 374 (no attorney-client relationship where it was unlikely that confidential information was exchanged). It is also notable that no documents were exchanged at either meeting or at any other time. Compare Bays, 418 Mass. at 688.
Additionally, the factual record lends little support to Feldman’s claim that his financial situation was the focus of their meetings. Both meetings had social overtones, and no notes were taken. Feldman shared no specifics with Grossman about his personal situation, and Grossman provided no considered legal advice. The fact that Grossman has no records of any representation of Feldman is also persuasive.
In sum, the record demonstrates at best that two public, quasi-social meetings took place between Grossman and Feldman at which Feldman may have made reference to his personal financial situation. These facts do not create an attorney-client relationship within the meaning of Bays, and Feldman’s motion must be denied on this basis.
II. Prejudice or Appearance of Impropriety
Even assuming, arguendo, that an attorney-client relationship existed between Grossman and Feldman, disqualification is inappropriate here since Feldman has not demonstrated that Looney & Grossman’s representation of the plaintiffs in the present action would cause him prejudice or create an appearance of impropriety. See Bays, 418 Mass. at 693.
Where an attorney-client relationship exists, the attorney is prohibited from knowingly using “a confidence or secret of his client to the disadvantage of the client.” Bays, 418 Mass. at 691, quoting S.J.C. Rule 3:07, DR 4-101(B)(2). Even after the termination of an attorney-client relationship, a lawyer remains bound to preserve those confidences. Id.
Disqualification is more likely to be appropriate where there is potential overlap between the issues considered during the previous representation and those in the action where disqualification is sought. Id. at 692. Also relevant to the inquiry is the length of time between the previous representation and the action in which disqualification is sought. Id.; Mailer, 390 Mass. at 374.
In 1991, the principal legal issue discussed by Feldman was his desire to protect his personal assets against creditors of G & S, or in the event G & S went bankrupt. In the current action, former partners of G & S are suing Feldman, among others, for negligence in connection with Feldman’s representation of them in the Williams action.
The principal, if not sole connection between the present action and the 1991 relationship between Grossman and Feldman is the Williams action. However, the nexus goes no deeper than that broad commonality. There is no evidence that the Williams action was discussed specifically or in detail during either of the Grossman-Feldman meetings. Even if it was discussed, Feldman has presented no evidence that he provided Grossman with any details of that litigation that relate even generally to the current action. Feldman’s main concern was protection of his personal assets, not the Williams litigation itself. There appears to be very little risk of any “overlap” between the instant litigation and the earlier Grossman-Feldman relationship. See Bays, 418 Mass. at 692.
Secondly, the three year time lapse between the Grossman-Feldman meetings and the commencement of Looney & Grossman’s representation of the plaintiffs in the present case is significant. See Mailer, 390 Mass. at 374 (lapse of five years weighed against disqualification). Grossman’s inability to recall the meetings with Feldman now six years ago further supports the conclusion that Looney’s continued representation of the plaintiffs in the present case will not prejudice Feldman.
Accordingly, Feldman’s motion to disqualify must also be denied on this basis.
ORDER
For the foregoing reasons, defendant Feldman’s Motion to Disqualify Plaintiffs’ Counsel is DENIED.

 Consistent with Bays, an evidentiary hearing was held in the present case.