Sosman, J.
Plaintiff Kenneth Dee has moved to disqualify defendant’s counsel, Kotin, Crabtree & Strong, LLP (“KC&S’j, on the ground that KC&S’s representation of defendant would violate Rule 1.9 of the Massachusetts Rules of Professional Conduct. For the following reasons, the motion is ALLOWED.
Background
Plaintiff Dee was employed at IBC USA Conferences, Inc. (“IBC”) from October 1991 until February 1995. His compensation included base salary plus commissions, and his employment agreement included a noncompetition clause. In February 1995, Dee left IBC and went to work for defendant Conference Holdings, Inc. In May 1995, IBC filed suit against Dee and Conference Holdings alleging that Dee’s employment with Conference Holdings violated his non-competition agreement.
KC&S represented both Dee and Conference Holdings in the IBC suit. As part of that joint representation, KC&S filed a counterclaim on behalf of Dee complaining that IBC had failed to pay Dee commissions for his 1995 work. That counterclaim, as drafted by KC&S, included the following allegations pertaining to Dee’s history of commission earnings at IBC:
32. During the time that Ken Dee worked at IBC as a conference producer, IBC promised to pay him, in addition to his salary, a “commission” equal to 5% of the profit on all of the conferences that he produced, minus an annual overhead charge. The first year of Ken Dee’s employment, the annual overhead charge was prorated to the number of months that Ken Dee was actually employed by IBC.
33. When Ken Dee became a manager in the fall of 1992, IBC promised to pay him, in addition to his salary, a “commission” equal to 5% on the profit on all conferences produced by the conference producers he supervised, minus an annual overhead charge.
34. IBC paid Ken Dee the aforesaid 5% “commission” at the end of each calendar year of his employment, in the years 1991, 1992, 1993, and 1994.
The counterclaim then complained that Dee and/or persons he had supervised had produced conferences in 1995 for which Dee was still owed his commissions. IBC defended against that counterclaim on the theory that commissions were not owed unless Dee was still at the company at the end of the year and that Dee’s voluntary departure in February 1995 therefore prevented him from earning any 1995 commissions.
IBC, Conference Holdings and Dee reached a settlement in principle on all claims and counterclaims sometime in early 1996. The final settlement agreement was executed by all parties in September 1996.
Meanwhile, back in May 1996, Conference Holdings had terminated Dee’s employment.[1] In December 1997, Dee filed the present action against Conference Holdings alleging that Conference Holdings failed to pay him the full commissions owed to him and that his termination was in bad faith to deprive him of said commissions. Conference Holdings, represented by KC&S, filed an answer denying that any commissions were owed. Conference Holdings also filed a counterclaim against Dee alleging that 1) Dee had misrepresented his 1994 earnings when negotiating his compensation package and 2) Dee had engaged in inappropriate conduct with female employees at Conference Holdings that "exposed [Conference Holdings] to potential sexual harassment claims.”
Discussion
“A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation." S.J.C. Rule 3:07, 1.9(a) (“Rule 1.9(a)”). Dee contends that the present action and counterclaims are “substantially related” to the former IBC suit and counterclaims and that Rule 1.9(a) therefore precludes KC&S from representing Conference Holdings in this action. Conference Holdings contends that the two matters are not “substantially related.”[2]
Courts using the “substantially related” test have taken differing approaches in its application, with some courts focusing on whether the issues involved are similar and other courts focusing on whether there is factual overlap between the two matters. Massachusetts has not yet determined which approach it will take. See Adoption of Erica, 426 Mass. 55, 62 (1997), and cases cited therein. Dee argues that the issues in the two matters are similar, as they both involve the subject of commissions and compensation. KC&S argues that the facts are not similar, because the cases involve different employers and different employment agreements. Without resolving the precise formulation of the test for “substantially related matter,” the court is satisfied that Dee’s claim against Conference Holdings for unpaid commissions is not “substantially related” to his earlier counterclaim against IBC for *710 unpaid commissions but that Conference Holdings’ counterclaim against Dee is “substantially related” to Dee’s earlier counterclaim against IBC.
The problem addressed by Rule 1.9(a) is that an attorney representing a party adverse to his former client would be tempted to betray confidences of that former client in order to serve the interests of the current client. ”[T]he later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duly of confidence to the former client." Bays v. Theran, 418 Mass. 685, 691 (1994), quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1318 (1981). Rather than force the former client to identify specific confidential information that might be used against him, “the ‘substantial relationship’ test operates by assuming that confidences were transmitted in the former attorney-client relationship.” Bays, 418 Mass. at 691.
Where the primary purpose of the “substantially related” test is to preserve client confidences by avoiding an “intolerably strong temptation” to betray them, the assessment of whether matters are “substantially related” must focus on whether the overlap or similarity between the two matters would potentially give rise to such a “temptation.” Labeling a similarify as a similarify of “issues” as opposed to a similarify of “facts” is not particularly helpful in that analysis. Rather, the court should focus on whether the relationship between the two matters is such that it is reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter. Where there is a likelihood that the attorney possesses useful information from that former client, the temptation to make use of that useful information arises. If the similarify between the matters is such that it would potentially give rise to such a temptation, the matters should be viewed as “substantially related.”
The defense of Conference Holdings in this case would not, by itself, pose that risk. Whatever information Dee provided to KC&S with regard to his claim for commissions from IBC, that information has absolutely no bearing on his claim to commissions from a different employer, under a different employment agreement, and for different work. Indeed, Dee’s dispute with IBC about his commissions hinged on a contract interpretation issue in the wake of his voluntary departure (i.e., whether he was only to receive commissions if he were still there at the end of the year or whether he was entitled to commissions for only a partial year’s work). His later commission agreement with Conference Holdings is entirely different, and his theory in the present case is that he was wrongfully terminated by Conference Holdings to avoid payment of those commissions. Nothing that Dee may have told KC&S about his contract with and voluntary departure from IBC would be useful to Conference Holdings in defense of Dee’s present claim for commissions.[3] That both cases concern the subject of “commissions" does not raise any temptation for KC&S to use information provided by Dee during the prior representation.
However, Conference Holdings’ counterclaim would potentially pose such a temptation. Conference Holdings alleges that, while negotiating his compensation terms with Conference Holdings, Dee misrepresented the amount of his 1994 compensation from IBC. Specifically, Conference Holdings points to a January 11, 1995 memo from a placement firm, which stated that Dee had a base salary of $45,000 plus bonus, “which last year [1994] brought him to $65,000-$70,000.” Although Conference Holdings points out that the contract interpretation issue involved in Dee’s counterclaim against IBC for his 1995 commissions was not based on his prior earnings history at IBC, information about his prior earnings was clearly given to KC&S. A history of Dee’s commissions in prior years, plus some information about how they had been calculated, was recited in Dee’s counterclaim against IBC as drafted by KC&S. That history may ultimately have been irrelevant once the basis of IBC’s defense was announced, but it was important enough at the outset to have Dee give KC&S some detailed background on the subject.
Despite this overlap between the present counterclaim for misrepresentation and the earnings history Dee previously confided in KC&S for purposes of his counterclaim against IBC, KC&S argues that there is in fact no risk of any betrayal of client confidences. At the time KC&S represented Dee, it represented him jointly with Conference Holdings. The attorney-client privilege does not apply to disputes between joint clients. See Beacon Oil Co. v. Perelis, 263 Mass. 288, 293 (1928); Liacos, Handbook of Massachusetts Evidence, §13.4.7 at 733 (1994 ed.). In the earlier joint representation, KC&S was free to share with Conference Holdings whatever information Dee provided, and free to share with Dee whatever information Conference Holdings provided. There is no confidential information from Dee for KC&S to betray, as the information was never intended to be kept confidential from Conference Holdings.
Viewed solely as a matter of preserving client confidences, there would be no problem in KC&S’ representation of Conference Holdings on this counterclaim. However, Rule 1.9(a) does not make any exception or carve out a different test in cases where joint clients later become adversaries. The factual basis for Conference Holdings’ misrepresentation counterclaim overlaps with the factual background recited in Dee’s earlier counterclaim against IBC. Thus, the present counterclaim is “substantially related” to the earlier counterclaim, and Rule 1.9(a) *711 precludes KC&S from representing Conference holdings on the misrepresentation counterclaim. That disqualification is not necessary to serve the principal purpose underlying Rule 1.9(a) does not allow this court to rewrite Rule 1.9(a).
Accordingly, KC&S may not represent Conference Holdings in the present matter, as Conference Holdings’ counterclaim against Dee is “substantially related” to Dee’s prior counterclaim against IBC within the meaning of Rule 1.9(a).[4]
ORDER
For the foregoing reasons, plaintiffs motion to disqualify defendant’s attorney is ALLOWED.

 The termination appears unrelated to the settlement of the IBC suit.

 There is no dispute that KC&S previously represented Dee, that KC&S is representing a client with interests “materially adverse” to Dee in this matter, and that Dee has not consented to that representation. Thus, the only aspect of Rule 1.9(a) as to which the parties disagree is whether the two matters are “substantially related.”

 Dee argues that the former representation would give KC&S insight into Dee’s personality, general objectives, personal background, etc. that might be of some overall strategic benefit to Conference Holdings. However, despite the fact that any former representation of a client gives an attorney those sorts of general insights about the client, Rule 1.9(a) does not preclude an attorney from ever representing any party adverse to a former client. It only precludes representation in “substantially related” matters.

 Where only the misrepresentation counterclaim is “substantially related” to the prior matter, KC&S could continue to represent Conference Holdings if Conference Holdings voluntarily dismissed that counterclaim. Absent that counterclaim, there would be no violation of Rule 1.9(a).