van Gestel, J.
This matter comes before the Court on a motion by the defendants to disqualify Robert S. McLaughlin (“Mr. McLaughlin”) and the firm of Gil-man, McLaughlin & Hanrahan, LLP as attorneys for the plaintiff.
BACKGROUND
The underlying suit is brought by a law firm, Lampert, Hausler & Rodman, P.C. (“LH&R”), against two of its former attorneys, John F. Gallant (“Gallant”) and Timothy J. Ervin (“Ervin”). LH&R is a professional corporation and, until late in 2000, Gallant was an officer, director and shareholder of LH&R, and Ervin was a senior associate therein.
After several months of disagreement between Gallant and the other two shareholders and officers of LH&R, Douglas E. Hausler (“Hausler”) and Alan G. Lampert (“Lampert”), Gallant and Ervin abruptly left LH&R and formed their own firm called Gallant & Ervin, P.C. (“G&E”).
LH&R has sued Gallant, Ervin and G&E, claiming ethical and legal violations and tortious conduct in connection with their leaving LH&R and establishing G&E. The complaint includes twelve counts asserting the following: Count I, Lanham Act claims; Count II and Count III, breaches of fiduciary duties; Count IV, conversion; Count V, misappropriation of corporate opportunity; Count VI, tortious interference with contract/advantageous business relations; Count VII constructive trust; Count VIII, breach of the implied covenant of good faith and fair dealing; Count IX, an accounting; Count X, violations of G.L.c. 93A; Count XI, common law unfair competition; and Count XII, seeking injunctive relief.
The basis for the motion to disqualify Mr. McLaughlin and his firm from representing the plaintiff in this case is grounded in Mr. McLaughlin’s one-time representation of Gallant several years ago in connection with a Board of Bar Overseers (“BBO”) inquiry. The facts of the BBO representation had their origin inaDecember 16,1993 letter to the BBO from a Senior Attorney at the Federal Deposit Insurance Corporation (“FDIC”). Counsel for the FDIC reported that Hausler, then an attorney at a firm called Carragher & Fox, had represented the Lowell Institution for Savings (“LIFS”). The letter described the situation generally as follows.
On August 31, 1991 LIFS was closed by the Commissioner of Banks. The FDIC was appointed as LIFS’s receiver. At that time, there was pending litigation brought by LIFS against Todd and Katherine Schermerhorn (the “Schermerhoms”), relating to a deficiency in a mortgage foreclosure. Hausler is said to have assisted at the foreclosure involving the Schermerhoms.
The complaining letter simply describes Gallant as “an associate at Carragher & Fox.” It does not claim that he did any work for LIFS with regard to the Schermerhorn matter.
Gallant and Hausler are said to have resigned from Carragher & Fox on September 3, 1991, and gone into practice together as Gallant & Hausler.[2] Carragher & Fox continued to represent the FDIC in the Schermerhorn matter, as successor to LIFS, after Gallant and Hausler left the firm.
The FDIC letter then says, “Recently a negotiated settlement was reached with the Schermerhoms which would conclude the litigation.” This Court observes that the FDIC letter to the BBO is dated September 16, 1993, and therefore presumes that its reference to “recently” is to a time shortly before that date. The letter then goes on to report that Hausler was then representing the Schermerhoms in connection with the settlement. The letter charges Hausler, and his then partner Gallant, with a conflict in violation of Rule 1.9 of the Massachusetts Code of Professional Responsibility.
The final substantive paragraph of the FDIC letter reads as follows:
*196 We have indicated to Attorney Hausler through our outside counsel that we do not consent to his continued representation of Mr. and Mrs. Schermerhorn or to the representation of the Schermerhorns by any other member or employee of the law firm of Gallant & Hausler. Nevertheless, the FDIC is prepared to conclude the settlement with the Schermerhorns provided the firm of Gallant & Hausler withdraw as counsel for the Schermerhorns and provided the Schermerhorns can attest that no member of the law firm of Gallant & Hausler counselled them in their settlement negotiations with the FDIC. In a letter dated December 9, 1993, which I have attached, Attorney Gallant indicated that while he does not believe that representation of the Schermerhorns by either Attorney Hausler or his firm is a conflict of interest, they will withdraw as counsel for the Schermerhorns. We are awaiting documentation in the form of evidence of receipt by the Schermerhorns of the firm’s withdrawal.
By a form letter dated September 3, 1991, Gallant & Hausler notified clients that they had worked for while at Carragher & Fox and that they had left and established their own firm. The clients were also advised of their rights regarding future representation, i.e, that they could follow Gallant and Hausler to their new firm, stay with Carragher & Fox, or select entirely new counsel.
The principal work performed by Mr. McLaughlin in the 1993-1994 BBO matter was to jointly represent Gallant and Hausler. For Gallant, this work focused primarily on gathering facts and assistance in drafting a response letter to the BBO.
As a result of the response filed with the BBO, the matter was dismissed without the opening of a formal complaint, but on the condition that Messrs. Gallant and Hausler attend an MCLE course related to ethics. Mr. McLaughlin has never otherwise represented Gallant, nor has he had any contact with him since the early spring of 1994.
In attempting to tie the former representation of Gallant by Mr. McLaughlin to the present suit, Gallant points to a copy of a November 24, 2000, letter sent on Gallant & Ervin letterhead to clients at LH&R advising of their leaving that firm and forming Gallant and Ervin. This draft letter is almost identical, in substance at least, to the letter sent by Gallant and Hausler to Carragher & Fox clients on or about September 3, 1991.
DISCUSSION
Any analysis of the present motion must begin with Rule 1.9(a) of the Massachusetts Rules of Professional Conduct. It reads in its entirety:
A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.
Here Mr. McLaughlin will only fit within the rule if his prior representation of Gallant involved a “substantially related” matter. The matters certainly are not “the same.”
Gallant was never consulted about the LH&R representation in this case and, therefore, cannot be said to have consented thereto.
The entire matter turns on the substantiality of the relationship between the matters in the 1993-1994 BBO matter and the matters presented here. And this is a subject that still lacks clarity in Massachusetts. See, e.g., Adoption of Erica, 426 Mass. 55, 61-62 (1997).
This Court agrees with Justice Sosman’s reading of Bays v. Theran, 418 Mass. 685 (1994), in Dee v. Conference Holdings, Inc., Middlesex Superior Court, No. 97-0608 (8 Mass. L. Rptr. 708). The primary purpose of the “substantially related” test is to preserve client confidences by avoiding an “intolerably strong temptation” to betray them. Id. at p. 4.
The Court is quite aware of the desirability of giving deference to an attorney’s best judgment as to whether his representation of a client brings him into conflict with provisions of the disciplinary code. Adoption of Erica, supra, 426 Mass. at 63. Similarly, the Court is sensitive to the fact that disqualification may have a serious consequence for attorney and client alike. 1 G.C. Hazard & W.W. Hodes, The Law of Lawyering, Sec. 1.9:112, at 304.
Motions to disqualify must be considered in light of the principle that courts “should not lightly interrupt the relationship between a lawyer and her client.” Adoption of Erica, 426 Mass. 55, 58 (1997). “(A]s a prophylactic device for protecting the attorney-client relationship . . . courts should hesitate to impose [disqualification] except when absolutely necessary.” Id. (citations omitted).
However, “[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.” Mass.R.Prof.C. 1.9(a). Prohibition of successive representation arises from “the attorney’s duty ... to preserve his client’s confidences and secrets.” Bays v. Theran, 418 Mass. 685, 691 (1994). That duly survives the termination of the attorney-client relationship. Id.
“Under the ‘substantial relationship’ test, a subsequent representation is proscribed ‘on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to *197 breach his duty of confidentiality to the former client. The [former] client need never prove that the attorney actually misused the confidences to the client’s disadvantage. Instead he must prove only the existence of the tempting situation by showing (1) that an attorney-client relationship existed in the former legal representation, and (2) that the former and current representations are both adverse and substantially related.’... Thus, the ‘substantial relationship’ test operates by assuming that confidences were transmitted in the former attorney-client relationship.” Id., quoting from Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1315 (1981).
G.D. Mathews & Sons Corporation v. MSN Corporation, 54 Mass.App.Ct. 18, 20-21 (2002).
What was involved in the 1993-1994 BBO matter is best understood by looking at what counsel for the FDIC was complaining about. It was the potential for or actuality of a conflict for Gallant to then be representing the Schermerhorns in the settlement of litigation with the FDIC, acting as receiver to LIFS, the latter being a client of Carragher & Fox at the time Gallant was an associate lawyer there. To this Court, it is doubtful that Gallant, solely by virtue of his associate status at Carragher & Fox, had the vicarious association with all of that firm’s clients that he would have had were he a partner or principal. Rather, he would have to have had contact by actually participating in a matter. This has not been shown with regard to Gallant — as opposed to Hausler — in the FDIC/Schermerhorn matter.
But even were there sufficient nexus between Gallant and the FDIC/Schermerhorn matter to give life or merit to the 1993-1994 complaint to the BBO against him, there is nothing in that matter that can be said to be “substantially related” to the issues involved six years later in Gallant’s departure from LH&R and nearly nine years later in litigation about what was done or not done in connection with that departure.
ORDER
For the foregoing reasons, the motion to disqualify Mr. McLaughlin and his law firm is DENIED.

 Gallant & Hausler is the predecessor to the plaintiff here, which was formerly known as Gallant, Hausler & Lampert, P.C.